In the Matter of the Claim of LOUISE BERGMAN against BUFFALO DRY DOCK COMPANY, Respondent.
STATE INDUSTRIAL BOARD, Appellant.

(Argued October 1, 1935; decided November 19, 1935.)

*John J. Bennett, Jr., Attorney-General (Roy Wiedersum* of counsel), for appellant. The accident to the decedent arose out of and in the course of the employment. (*Matter of Miles* v. *Gibbs & Hill, Inc.*, 250 N. Y. 590; *Matter of Monaco* v. *Kesselman's Baby Stores, Inc.*, 240 App. Div. 930; *Matter of Regan* v. *Robins Dry Dock & Repair Co.*, 218 App. Div. 806; *Matter of Corrina* v. *Debarbieri*, 247 N. Y. 357; *Matter of Wickham* v. *Glenside Woolen Mills*, 252 N. Y. 11; *Matter of Ruppert* v. *Plattdeutsche Volksfest Verein*, 263 N. Y. 338; *Matter of Pendl* v. *Haenel*, 229 App. Div. 52; 234 App. Div. 643.)

*Gerard John Hernon* for respondent. The accident did not arise out of or in the course of the decedent's employment. (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148; *Matter of Daly* v. *Bates & Roberts*, 224 N. Y. 126; *Matter of Lebeda* v. *Pongracz*, 256 N. Y. 560; *Matter of Luce* v. *Beiter*, 239 App. Div. 23; *Van Gee* v. *Korts*, 252 N. Y. 241; *Matter of Gifford* v. *Patterson, Inc.*, 222 N. Y. 4; *Matter of King* v. *Standard Oil Co.*, 184 App. Div. 453; *Matter of Smith* v. *Northport Water Works Co.*, 252 N. Y.

521; *Matter of Harris* v. *Cheney Hammer Corp.*, 221 App. Div. 199; *Matter of Hyatt* v. *U. S. Rubber Reclaiming Co.*, 256 N. Y. 571; *Matter of Commissioner of Taxation & Finance* v. *Fure*, 264 N. Y. 678; *Matter of Berresi* v. *Ryan*, 242 App. Div. 279.)

HUBBS, J. Otto Bergman, the deceased employee, was a night watchman employed by the Buffalo Dry Dock Company. His hours of duty were from six P. M. to midnight. He was one of two watchmen employed to work during those particular hours. He had been working about a week prior to the time of the accident. Each watchman was required to make three rounds of the plant every night. These rounds were made every hour and the watchmen alternated so that each man made one round every two hours. On alternate nights one watchman would start on his rounds at six, eight and ten o'clock and on the other nights at seven, nine and eleven o'clock. While one watchman was making the round, the other watchman remained in the office to attend to incidental duties there. In making the rounds of the premises of the employer the watchman was required to punch two series of signal boxes, using keys supplied by a local telegraph company which maintained the signal system. The signal boxes were arranged in series of ten. The boxes in each series could only be punched by doing so in the numerical order of the boxes and when the tenth box of each series was punched a signal was transmitted to the telegraph company's office. The telegraph company observed the signals and in the event that none was received would telephone the plant or send a man to ascertain the trouble or the reason for the failure of signals.

On the night deceased received the injuries which caused his death, his co-watchman, who made his last round commencing at ten o'clock in the evening, finished his round at about ten-forty and went home carrying a set of keys with him instead of leaving them with deceased.

Deceased required those keys to make a round at eleven o'clock and discovering that his co-watchman had taken the keys decided that he had time enough to procure the keys from the home of his co-watchman. He thereupon started, at about twenty minutes to eleven, to walk to the home of the co-watchman for the purpose of obtaining the keys and while on the way was struck by an automobile, receiving the injuries which caused his death. The time required to walk from the plant of the employer to the home of the co-watchman was variously stated by the witnesses at from ten to twenty minutes.

It was the custom for the man who made the round which began at ten o'clock to leave the plant for the night after he finished that round. That apparently resulted in leaving the office of the employer unattended from the time when the watchman making the ten o'clock circuit began his round until such time as the watchman of a later shift arrived at the plant. Witnesses for the claimant testified that it was the custom for the man making the ten o'clock round to leave when he finished his round, and the employer failed to show any specific instructions or rules to the contrary. In any event, it does not appear that the deceased employee was in any wise responsible for the act of the co-watchman in leaving the plant when he did. Upon the evidence, the Industrial Board found as a fact that the deceased employee was injured while " engaged in the regular course of his employment and while working for his employer, and while on his way to the house of his partner, one Michael Donovon, to get the keys which were used to punch the time clocks in the employer's premises, and which keys were necessary for the said Otto Bergman to continue his regular duties."

The Industrial Board also found that the injuries sustained by Bergman which resulted in his death were accidental injuries and arose out of and in the course of his employment. Upon these findings an award was made in favor of the claimant. The Appellate Division,

by a divided court, reversed and in its decision stated that it was apparent that the deceased had abandoned his employment.

Leaving the premises of an employer in an effort to further the interest of the employer is not always an abandonment of the employment. (*Matter of Ruppert* v. *Plattdeutsche Volksfest Verein*, 263 N. Y. 338.)

Neither is the exercise of poor judgment in what constitutes furtherance of the interest of the employer an insuperable bar to recovery of compensation. (*Matter of Ruppert* v. *Plattdeutsche Volksfest Verein*, *supra*.)

While the deceased employee might have remained in the office and might, by notifying the telegraph company, have obtained the other keys, it cannot be said as a matter of law that he was outside the general duties of his employment in proceeding to the home of his co-watchman to get the keys which the co-watchman was supposed to have delivered to him.

We think, under the facts disclosed by the record, that the Industrial Board reached the correct conclusion.

The order of the Appellate Division should, therefore, be reversed and the award of the State Industrial Board reinstated, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.