## OGDEN TRANSIT CO. et al. v. INDUSTRIAL COMMISSION et al.

No. 5957.   Decided May 10, 1938.   (79 P. 2d 17.)

*DeVine, Howell & Stine,* of Ogden, for plaintiffs.

*Joseph Chez,* Atty. Gen., and *Samuel C. Powell* and *Samuel H. Barker,* both of Ogden, for defendants.

FOLLAND, Chief Justice.

The ultimate question is whether or not the accident which caused the death of Orrin R. Ferrin, an employee of the Ogden Transit Company, was one "arising out of or in the course of employment." Ferrin was struck by an automobile at the intersection of Cross street with Washington avenue in Ogden. He was a bus operator for the company, had finished his day's work, and left his bus at the company's barns on Seventeenth street and Lincoln avenue. He arrived at the barns at 12:36 a. m., the 24th of January, 1937. It was his duty to make a report of his operations and the money received. He was allowed five minutes on pay to do this. It was customary for bus operators to make out their reports and turn them into the office with the cash collected on their runs. The company operated what is called the "owl" run. Two busses leave the barns at 1 a. m., proceed east on Seventeenth street to Washington avenue, then one bus goes south to the south city limits, the other turns north to approximately the northern city limits. The busses start this last run from the barns for the convenience of employees of the company who were entitled to ride free on any of the company busses, including those on the "owl" run. On the night in question, Ferrin had trouble making his report balance. It was not finished at 1 a. m., when the bus started its "owl" run, so he took the report with him and worked on it while riding in the bus. Ferrin's home was on the south side of Cross street, some 2½ blocks east of Washington avenue. He customarily alighted from the bus on the east side of Washington at the south side of Cross street. On the night in question he remained in the bus to finish his report and did not leave the bus until it again reached Cross street on the return trip. He handed the finished report to the bus operator to deliver to the office and then left the bus at a point on the west side of Washington avenue and opposite the north side of Cross street. He had to cross Washington avenue in order to reach Cross street sidewalk nearest his home. While crossing Washington avenue he was struck

by an automobile traveling north on the east side of the street.

There is no substantial conflict in the evidence. After finding the facts substantially as we have indicated, the commission made this finding:

"The Commission finds that the unfinished work incumbent on deceased to perform for his employer, and having elected to do it at this time, necessitated his leaving his accustomed course of travel; that the accidental injury occurred while traveling back and prior to reaching his usual path or accustomed course of travel toward his home; that Orrin R. Ferrin suffered an accidental injury arising out of or in the course of his employment by the defendant, Ogden Transit Company, which resulted in his immediate death."

Three theories are advanced by respondent in support of the finding of the commission that Ferrin was in his employment while crossing Washington avenue: (1) That he was in the course of executing a special mission for the benefit of his employer; (2) that the place where he was injured is to be regarded as an extension of the premises of the company; and (3) that the company had contracted to, or it was the custom to, transport Ferrin to the regular stop on the east side of Washington avenue at Cross street, and that it failed in that duty so that Ferrin was still in the company's employ until he reached that point.

In support of the theory that Ferrin was engaged in a special mission for his employer, the case of *Kahn Bros. Co.* v. *Industrial Comm.*, 75 Utah 145, ■ 283 P. 1054, is cited. In the Kahn Case this court said:

"It is a general rule that injuries sustained while an employee is traveling to and from his place of employment are not compensable. An exception to this rule, however, is where an employee, either on his employer's or his own time, is upon some substantial mission for the employer growing out of his employment. In such cases the employee is within the provision of the act. The mission for the employer must be the major factor in the journey or movement and not merely incidental thereto."

Defendants argue that this case falls squarely within the exception mentioned in the Kahn Case. We cannot see that it does. There the employee was on his way to the post office where he was to transact business for the employer. It was the special missison to the post office for the employer that exposed the employee to the hazards of the street. Here we cannot find any special mission for the employer which required Ferrin to cross Washington avenue. Whatever work he had done for the employer was finished and he was on his way home. Going home was the major and indeed the only object of his travel across the street. If we assume that the employee was engaged in a special mission for the employer while on the bus, because he was working on his report, yet that report was finished and the special mission, if any, ended when he left the bus for his home. But we cannot say he was on a special mission for his employer while on the bus making out his report. While he was required to make out his report, he was under no direction of the employer to make it out that night or at any particular place. The custom was to make it out at the barns, before leaving for home, but he had until 2 p. m. that day within which to complete it and turn it in to the office. After ending his work at the barns, he was at liberty to do as he pleased and go wherever he desired. He could make up his report anywhere he wished. It was not necessary to the master's business that it be done at any particular place. Suppose he had taken a ride in an airplane next morning and had finished his report while on that trip, but in landing he had been accidentally killed? Could one by any stretch of the imagination say that the master's business had subjected him to the risk, and, therefore, he was killed as a result of an accident arising out of or in the course of his employment. Here he chose to make up his report while taking a bus trip. It was his own choice—not required by his employer at all. Had the employer directed that he write the report on the bus and deliver it to the bus operator before leaving the bus, we should have quite a different situ-

ation. In *Roberts* v. *Industrial Comm.*, 87 Utah 10, 47 P. 2d 1052, we said (page 1053) :

"These cases involved situations where the employee was directed to use the particular means of conveyance used, and at the time of his injury he was doing as he had been directed, or the employee was either going to perform or was returning from performing some special errand or service for his employer when he was injured."

In the case of *Morgan* v. *Industrial Comm.*, 92 Utah 129, 66 P. 2d 144, this court quoted with approval from the New York Court of Appeals, *Bergman* v. *Buffalo Dry Dock Co.*, 269 N. Y. 150, 199 N. E. 38, as follows (page 146) :

" 'The decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils.' "

Morgan was the principal of the school and it was shown that the errand home was a "substantial one for and in the interest of the employer." Morgan, as the principal of the school, who largely directed his own order of work for the employer, was in a different category from an employee who has customary hours and a customary place to work and who is under order of another as to when and where he shall work. Ferrin was not such a superior who could direct his own order of work. The Morgan Case, therefore, furnishes no support for the commission's finding.

2. Can Washington avenue at Cross street be regarded as part of the premises of the employer within the doctrine of the following cases: *Cudahy Packing Co.* v. *Industrial Comm.*, 60 Utah 161, 207 P. 148; 28 A. L. R. 1394, certiorari denied *Cudahy Packing Co.* v. *Parramore*, 260 U. S. 733, 43 S. Ct. 94, 67 L. Ed. 487, 30 A. L. R. 532; *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; *Bountiful Brick Co.* v. *Industrial Comm.*, 68 Utah 600, 251 P. 555; *Bountiful Brick Co.* v. *Giles*, 276 U. S. 154, 48 A. Ct. 221, 72 L. Ed. 507, 66 A. L. R. 1402; *De Constantin* v. *Public Service Comm.*, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A, 329?

The answer must be in the negative. In the Cudahy Case the court said (page 150) :

"If the liability exists, it is by reason of the fact that the plant or manufacturing establishment is so located that there is no other method or means of approach except over railroad tracks or other dangerous places, and that the same are in such close proximity to the plant that the employe has no election or option in determining or selecting his way of approach."

And in the West Virginia case it was said (page 89) :

"If the place at which the injury occurred is brought within the contract of employment, by the requirement of its use by the employe, so that he has no discretion or choice as to his mode or manner of coming to work, such place and its use seem logically to become elements or factors in the employment, and the injury thus arises out of the employment and is incurred in the course thereof. But, on the contrary, if the employe, at the time of the injury, has gone beyond the premises of the employer, or has not reached them, and has chosen his own place or mode of travel, the injury does not arise out of his employment, nor is it within the scope thereof."

In *Edwards* v. *Industrial Comm.*, 87 Utah 127, 48 P. 2d 459, we commented on the principle underlying the decisions in the Cudahy and Bountiful Brick Cases as follows (page 462) :

"The principle which appears to support these two cases is that the approach to the employment involved a peculiar and abnormal exposure to danger which was annexed as a risk incident to the employment and that therefore the employment contemplated and included in itself such risk to such dangers."

Such cannot be said under the facts of this case. Here the accident happened at some distance from the company's barns, and it is clear Ferrin was not required by the employer to take the particular route he followed, but had and exercised a discretion as to the means of travel and the route he could take. It was by his own choice that he went to the end of the line and back again. The exigency of his work did not at all require that he be subjected to the risk incident to crossing Washington avenue.

3. There was no obligation on the employer by contract or custom to transport Ferrin to the regular stopping point on the east side of Washington avenue at Cross street. The contract of the employee with the company was merely that he would be transported free of fare on any bus of the company on its regular run. The company made it convenient for employees to use the "owl" run by starting the busses at the car barns. The employee was free to leave the bus at any regular stopping place. The fact that he usually got off at the stopping point nearest his home did not obligate the company to always, under any and all circumstances, take him to that point. The night of the accident he chose not to alight at that point but to continue to the end of the line and alight at another point, nearest his home, on the return trip.

Cases cited by plaintiff support the view that there is an exception to the general rule that an employee will not be regarded as in the course of his employment while going to or returning from the place of employment where the employer contracts to and does furnish transportation to and from work. Where an injury happens while the employee is so traveling or while getting on or off the vehicle of transportation, so close in time and space as to be incidental thereto, it is generally held to arise out of the employment. *Harrison* v. *Central Construction Co.*, 135 Md. 170, 108 A. 874; *Scott* v. *Willis*, 150 Va. 260, 142 S. E. 400; *Konopka* v. *Jackson County Road Comm.*, 270 Mich. 174, 258 N. W. 429, 97 A. L. R. 552. These cases are not in point because there was no contract which obligated the company to transport the employee to and from work in the sense used in such cases. Ferrin wore a badge which served as a free pass, permitting him to ride free on any of the busses on regular runs. He was at liberty to board a bus or leave it at any regular stop. Ferrin continuously rode on the "owl" run from the barns to the stop at Cross street on the east side of Washington avenue. This custom of Ferrin's cannot be transposed into a contract obligation of the employer to de-

liver him at the stopping point, extending the place of his employment to that point.

The award of the commission is set aside and the cause remanded to the Industrial Commission of Utah.

HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.