[Civ. No. 12536.   First Dist., Div. One.   Nov. 1, 1943.]

CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and RAYMOND K. TOMPKINS, Respondents.

John J. O'Toole, City Attorney, and Albert F. Skelly, Deputy City Attorney, for Petitioner.

Everett A. Corten and Fred G. Goldsworthy for Respondents.

DOOLING, J. pro tem.—By this proceeding in certiorari petitioner seeks to annul an award of the Industrial Accident Commission in favor of respondent Tompkins. Tompkins is employed by the city and county of San Francisco as a streetcar conductor on its Municipal Railway. At 12:41 a. m. on February 8, 1943, he finished his "run" for the night at the carbarn of the Municipal Railway at Mariposa and Hampshire Streets in San Francisco. He was allowed ten minutes thereafter to turn in the cash collected by him as conductor, and at 12:51 his wages for the night terminated. Shortly thereafter Tompkins boarded another streetcar operated by the Municipal Railway in order to go to his home. He was traveling on a pass entitling him to ride free at any time on all Municipal Railway cars and busses. While riding on this latter car, the car collided with a truck and Tompkins received the injuries for which the award under attack was made.

The questions presented herein may be brought into focus by the following quotation from the recent opinion of our Supreme Court in *California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 461, 463 [132 P.2d 815]:

"Petitioner contends that the case falls within the general rule that injuries sustained by an employee while going to or coming from his place of employment are not compensable under the Workmen's Compensation Act. (See 27 Cal.Jur. 380.) It is well recognized, however, that if an employer, as an incident of the employment, furnishes his employee with

transportation to and from the place of employment and the means of transportation are under the control of the employer, an injury sustained by the employee during such transportation arises out of and is in the course of the employment and is compensable."

It is petitioner's claim that this case falls within the general "going and coming" rule above stated and the injury is therefore not compensable. Respondents rely on the exception to the "going and coming" rule stated in the second sentence of the above quotation, their position being that since Tompkins was being transported from his place of work to his home by means of a vehicle under the control of the employer and as an incident of his employment his injury is compensable.

The pass that was furnished the injured employee contained a printed recital on its back reading in part: "This pass for free transportation on cars or buses of the Municipal Railway is issued as a courtesy and not as part of consideration for employment. . . . Pass must be surrendered upon its expiration date, upon termination of employment, or when its surrender is requested by proper authority."

Petitioner argues that this language compels a finding that the pass was a mere gratuity revocable at will and not a part of the contract, nor an incident of the employment.

The witness Hauser, called by petitioner herein, testified that he was an inspector employed on the Municipal Railway and had been with the Municipal Railway for over thirty years; that each employee of the Municipal Railway is given a pass of the kind issued to Tompkins; that such passes have been issued since 1942; that prior to that time badges were issued to all Municipal Railway employees giving them the same privileges, and that the use of badges and passes for free transportation on the Municipal Railway has been an accepted condition of employment for the entire period of his connection with the Municipal Railway.

The Industrial Accident Commission was not bound to accept the printed statement on the pass, but was entitled to consider evidence showing "the inception of the agreement, the situation of the parties at the time of the execution of the contract, and the practical construction of the contract by the parties." (*Pacific Lbr. Co.* v. *Industrial Acc. Com.,* 22 Cal.2d 410, 416, 431 [139 P.2d 892].) Herein the established and unvarying custom of at least thirty years duration as

"an accepted condition of employment" to furnish such transportation was entitled to be considered in determining whether it was furnished as a part of the contract of employment and incidental thereto. "Whatever has been uniformly done in the execution of such a contract by both of the parties to it well may be regarded as having been adopted by them as one of its terms." (*In re Donovan*, 217 Mass. 76 [104 N.E. 431, 432, Ann.Cas. 1915C 778]; *Phifer's Dependents* v. *Foremost Dairy*, 200 N.C. 65 [156 S.E. 147, 148].)

The language of Mr. Justice Traynor in *California Cas. Indem. Exch.* v. *Industrial Acc. Com., supra*, at pp. 464-465, is particularly apposite:

"The employer, however, supplied transportation to and from its office as a regular practice, and the employee regularly used that transportation. An agreement by an employer to furnish transportation need not be express; it may be implied from the circumstances of the case and the uniform course of conduct of the parties. . . .

". . . The employer's right to withdraw the privilege of using the car was merely a right to terminate the contract at will, and was not inconsistent with the existence of the agreement. A contract at will remains a contract until it is terminated. . . .

"Petitioner contends that even if the evidence shows an agreement to furnish transportation it was not part of the contract of hire and therefore not an incident of the employment. Transportation may be incidental to the employment, however, even though it is only a collateral or subsidiary part of the contract of employment, or 'something added to the principal part of that contract as a minor, but none the less a real, feature or detail of the contract.' [Citing *in re Donovan*, 217 Mass. 76 (104 N.E. 431, Ann.Cas. 1915C 778).] Since the transportation was regularly furnished to the employee solely because of her status as an employee, the inference is reasonable that the transportation depended upon the fact of the employment and was incidental to it."

Petitioner cites and relies upon certain New York cases of which *Tallon* v. *Interborough Rapid Transit Co.*, 232 N.Y. 410 [134 N.E. 327, 21 A.L.R. 1218], is the leading authority in that jurisdiction. In that case one Tallon, an employee of the Interborough Rapid Transit Company, was killed

while riding to work on one of its trains using a pass given to him for that purpose by his employer. The New York Court of Appeals held by a divided court, three justices dissenting, that his death was not compensable. The reasoning of the majority opinion is found in the following quotation (pp. 327 and 328 [134 N.E.]) :

"The passenger trains of the defendant were public conveyances. Anybody and everybody had a right to ride in them upon paying the fare. Tallon was not obliged to use these trains in going to his work under any agreement with the defendant. He could have traveled by any other convey-ance or could have walked. . . .

"Now this case differs materially from those cases where the employer, in order to get his employees to and from their work, provides conveyances exclusively for their use which in no sense are public conveyances and in which the employees undertake to ride as part of their contract of employment in going to and from their work."

The holding is thus put on two grounds: (1) That the employee was free to use other means of going to and from his place of employment; and (2) that the conveyance, although operated by the employer, was a public carrier and not provided exclusively for the purpose of transporting the employees. Neither of these bases of decision has found acceptance in the other jurisdictions of this country.

The first ground was the basis of the decision of the House of Lords in *St. Helens Colliery Co., Ltd.* v. *Hewitson* (1924), App.Cas. 59. In that case an employee was injured on a train furnished by his employer to transport its employees to and from their place of employment. The House of Lords held that the injury was not covered by the British Workmen's Compensation Act because the employee was not obligated to use the train in going to and coming from his work. This decision overruled a long line of earlier British cases. (See note in 62 A.L.R. pp. 1445-6.) In *California Cas. Indem. Exch.* v. *Industrial Acc. Com., supra,* at page 463, our Supreme Court said of the St. Helens Colliery Co. case that it "represents the English rule but not the law in the United States"; and, at page 464, expressly rejected its holding in the following language:

"Likewise, the employee's freedom to use other transportation no more precludes the existence of an agreement than

the freedom of the purchaser of a railroad ticket to use other transportation than that for which he paid." (Citing *American Coal Mining Co.* v. *Crenshaw,* 77 Ind.App. 644 [133 N.E. 394], and *Konopka* v. *Jackson County Road Com.,* 270 Mich. 174 [258 N.W. 429].)

The second ground of decision in the Tallon case is opposed to the great weight of American authority. The courts of this country, outside of New York, have refused to make a distinction between transportation by private and public conveyance operated by the employer and have accepted the view expressed in the dissenting opinion of McLaughlin, J., in the Tallon case that (p. 329 [134 N.E.]): "The transportation is the same whether it be in a private or public conveyance." (*Radermacher* v. *St. Paul City Ry. Co.,* —— Minn. —— [8 N.W.2d 466, 469] ; *De Camp* v. *Youngstown Municipal Ry. Co.,* 110 Ohio St. 376 [144 N.E. 128] ; *Micieli* v. *Erie R. Co.,* 18 N.J.Misc. 466 [14 A.2d 56] ; *Manchester St. Ry.* v. *Barrett,* 265 F. 557; *Knorr* v. *Central Railroad of New Jersey,* 268 Pa. 172 [110 A. 797] ; *Central Const. Corporation* v. *Harrison,* 137 Md. 256 [112 A. 627] ; *Western Indemnity Co.* v. *Leonard,* (Tex.Com.App.) 248 S.W. 655; *cf. Dellepiani* v. *Industrial Acc. Com.,* 211 Cal. 430 [295 P. 826].)

▮ The provisions of the Workmen's Compensation Act are to be liberally construed to extend its benefits for the protection of employees injured in the course of their employment. (*Pacific Lbr. Co.* v. *Industrial Acc. Com., supra,* p. 433, and cases there cited) and we believe that the majority rule is more in keeping with the spirit of the Workmen's Compensation Act and better founded in reason than the peculiar refinement of the rule developed in England and New York.

▮ Finally petitioner argues that, since the employee could use the pass at any time and was not limited in its use to going to and coming from his work, that fact must distinguish this case from those relied upon by respondents. It is said that to affirm this award will create a condition in which a distinction must be made in future cases between those occasions when a pass is used in going to or coming from work and other times when it is being used by an employee on errands of his own in no way connected with his employ-

ment. The distinction is no more difficult than many others which courts and administrative bodies are daily called upon to make. It would be unrealistic to hold that an employee traveling to and from work on a pass limited to use for that purpose would be covered by the Workmen's Compensation Act, and that one traveling to and from work on a pass giving him the greater privilege of also traveling for other purposes of his own would not be covered. The legal consequences of the employer furnishing transportation to and from work as an incident of the employment in a conveyance under its control are not changed by the fact that the employer also furnishes transportation for other purposes in such conveyances. The Supreme Court of Minnesota found no difficulty in disposing of the identical question in *Radermacher* v. *St. Paul City Ry. Co.*, *supra*, a case remarkably like the present one on its facts.

The award is affirmed.

Peters, P. J., concurred.

WARD, J.—I dissent. The finding herein—that the injuries sustained by the respondent arose out of and in the course of his employment—purporting to be based upon the evidence presented, is in reality not a finding of fact but a conclusion of law (*Hines* v. *Industrial Acc. Com.*, 184 Cal. 1 [192 P. 859, 14 A.L.R. 720]), and therefore not subject to the strict rule of the Labor Code as found in section 5953. (*Crown City Lodge* v. *Industrial Acc. Com.*, 10 Cal.App.2d 83 [51 P.2d 143].)

The petition for the writ presents a jurisdictional question arising from the interpretation to be given a document—a "courtesy pass"—which permitted the employee to ride at will on petitioner's municipal street railway. The vital question is whether the issuance of such a pass under its "terms and conditions" is legally sufficient to constitute it "an incident of employment" as "a condition of employment" warranting an award for injuries sustained while riding on a street car under its authorization after all duties of the employee had temporarily terminated.

It is not contended that in the Civil Service Classification of Conductors and Motormen any mention is made of a "courtesy" or "free" pass as an attribute of employment

or as part consideration for the performance of duties. From the record and from the judicial knowledge that the court may take of charter provisions it is not in law or in fact an integral part of the contract of employment. It was admitted during the argument that other means of transportation were available, and that the respondent made a voluntary selection of the particular transportation facility herein involved. Whether he boarded the car at the barn or a short distance away the respondent testified he could not remember.

The pass entitled the holder thereof, in the course of employment, to ride free of charge at any time, without restriction, on any streetcar or bus belonging to the Municipal Railway, regardless of whether he was bent on business, pleasure, or a personal mission.

The evidence preponderates that the issuance of the pass was not "a condition of employment"; but the commission inferentially found to the contrary. The finding was based upon the affirmative answer of one witness to—be it said in passing—a leading question calling for a legal conclusion that badges and passes "had been an accepted condition of employment." Assuming the statement could be accepted by the commission to be correct as to employees generally, still there was no evidence that the applicant herein agreed to work upon such a stipulation or understanding. The applicant testified that he could have been employed without the issuance of the pass; that it was not an essential part of his employment.

That the pass is not "a condition of employment" is demonstrated by its terms, which include a waiver of liability and a statement that it "is issued as a courtesy and not as part of consideration for employment," to employees or "other person named on face." It may be issued to former employees on pension, to officials and employees of other branches of the city government, to nonofficials and to nonemployees, and, if deemed proper, to nonresidents and persons connected with branches of a railway not connected with the city government.

Assuming that the commission could ignore the fact that it could be issued to "others" and conclude that the "courtesy pass" was "a condition of employment," the facts of the case do not fall within the rule enunciated in *California Cas.*

*Indem. Exch.* v. *Industrial Acc. Com.,* 21 Cal.2d 461 [132 P.2d 815], applied to the facts there presented. The street car was not "furnished by the employer to the employees for the purpose of transporting them to and from work" (p. 463). It was "merely an accommodation that they might use or not as they wished" (pp. 463-464). There is no evidence that "the employee regularly used that transportation" (p. 464) and no evidence that the transportation was supplied "as a regular practice" (p. 464) or, as held in the cited case "solely because of her status as an employee" (p. 465). It is a self-evident fact that streetcar transportation could not be furnished to the last crews finishing their duties at night, or the first crews to report in the early morning, and hence could not be a "feature or detail of the contract" (p. 465).

This appears to be the first time that the California Industrial Accident Commission has determined that a "courtesy pass" is "a condition of employment." There seems to be some diversity of opinion as to whether an employee riding free on transportation facilities of an employer may, under the provisions of an industrial accident act, claim compensation for accidental injury. Up to this time California has followed the so-called New York rule, to which many other jurisdictions have adhered. (Campbell, Workmen's Compensation, sec. 178, pp. 167-168, citing authority therefor.) To come within the rule established in California, the transportation must be assumed to be part of the contract of employment and "courtesy rides given by the employer do not give rise to liability under the statutes." (*Trussless Roof Co.* v. *Industrial Acc. Com.,* 119 Cal.App. 91 [6 P.2d 254], citing *Boggess* v. *Industrial Acc. Com.,* 176 Cal. 534 [169 P. 75, L.R.A.1918F 883].)

*Smith* v. *Industrial Acc. Com.,* 18 Cal.2d 843 [118 P.2d 6] is a case involving the use by an employee of a truck, belonging to his employer, in traveling from his place of employment. Under the facts of that case the court determined that the applicant was entitled to an award, but differentiated the facts of that case from those of cases wherein the employee was riding as a matter of "courtesy." In discussing "incident of employment," etc., quoting from *Trussless Roof Co.* v. *Industrial Acc. Com., supra,* the court said (p. 847): " 'The use of the words "as such" is necessary because

courtesy rides given by the employer do not give rise to liability under the statutes. (*Boggess* v. *Industrial Acc. Com.* (1917), 176 Cal. 534 [L.R.A. 1918F 883, 169 P. 75]; *Gruber* v. *Mercy* (1929), 7 N.J.Misc. 241 [145 A. 106].) In other words, the transportation has to be furnished as a part of the contract of employment, to come within the rule. (*In re Donovan* (1914), 217 Mass. 76 [Ann.Cas. 1915C 778, 104 N.E. 431].)'" It is evident from the above that as late as 1941 California has given approval to the rule that "courtesy rides" do not come within the exception of the "going and coming" rule.

The law is that the conduct of the parties in carrying out the contract of employment may be considered with the contract in determining their respective rights and duties. (*Burlingham* v. *Gray*, 22 Cal.2d 87 [137 P.2d 9].)

Assuming, but not admitting, that the Industrial Accident Commission could ignore the written conditions attached to a contract of courtesy riding and determine the rights of the parties in that regard from all the circumstances surrounding the employment, the evidence shows that the injured employee herein, who was the party in interest, at no time considered the "pass" a condition of employment. Under such circumstances I am unable to agree that in the determination of this legal question the opinion testimony of a third party is competent, standing alone, to prove the meeting of the minds on the "condition of employment" between the injured party and petitioner.

The majority opinion cites certain cases wherein the New York and California rule has not been followed. One of the cases relied upon is *Radermacher* v. *St. Paul City Ry. Co.,* —— Minn. —— [8 N.W.2d 466], where a specified number of free tickets, the equivalent in value of $7.50 a month, were issued to employees. The court comments upon this additional amount received in consideration of employment and states (p. 470 [8 N.W.2d]): "A gratuitous passenger, in the absence of any condition or stipulation as to assumption of risk of personal injury, is entitled to the same degree of care as any other passenger." In the present case on the contrary there was a specific waiver, and passes in identical terms were issued not only to employees but to "others." In brief, the problem we are interested in is a "courtesy pass" and not a pass given in part payment of salary.

In addition to the Tallon case referred to in the majority opinion, see *American Mut. Liability Ins. Co.* v. *Curry,* 187 Ga. 342 [200 S.E. 150]; *Schultz* v. *Champion Welding & Mfg. Co.,* 230 N.Y. 309 [130 N.E. 304]; *Kowalek* v. *New York Consolidated R. Co.,* 229 N.Y. 489 [128 N.E. 888]; 10 A.L.R. 172; 62 A.L.R. 1445; *Dellepiani* v. *Industrial Acc. Com.,* 211 Cal. 430 [295 P. 826]; *Smith* v. *Industrial Acc. Com., supra; Trussless Roof Co.* v. *Industrial Acc. Com., supra; Boggess* v. *Industrial Acc. Com., supra.*)

If the ''courtesy pass'' is construed in this case as ''a condition of employment'' then it would be just as reasonable to hold that its use on a personal mission could be regarded by the employee as a ''condition'' or incident of employment upon which the employee advanced from the civil service list to the status of employee, and accordingly that he would be entitled to compensation for an injury received on the way to church, a picnic or high jinks.

In my opinion the award should be annulled.

Petitioner's application for a hearing by the Supreme Court was denied December 27, 1943.