OWENS *v.* SOUTHEAST ARKANSAS TRANSPORTATION COMPANY.

4-9142                                    228 S. W. 2d 646

Opinion delivered March 27, 1950.

Rehearing denied May 1, 1950.

*John P. Vesey*, for appellant.

*Jay W. Dickey*, for appellee.

GRIFFIN SMITH, Chief Justice. For more than thirty years W. C. Owens had been employed by Southeast Arkansas Transportation Company and its predecessors. He was struck by an automobile December 26, 1948, and died from the injuries three days later. The instrumentality causing death was not an agency of the employer. The question is whether facts not substantially disputed were sufficient, as a matter of law, to carry the Company's Compensation coverage under Act 319 of 1939 to the time and place of misfortune.[1] The decedent's widow has appealed from a Circuit Court judgment sustaining the Commission's finding that the injury did not arise out of or occur in the course of the servant's employment.

[1] Ark. Stat's, § 81-1301; Init. Meas. No. 4, 1948.

As a bus driver for the Transportation Company Owens went from his home to the carbarn and started his daily runs at 6:22. He was relieved for an hour at 10:56, then worked until 6:12—an active employment period of ten hours and eighteen minutes. In lieu of a weekly or monthly salary, he was paid by the hour, and his current earning was $57.50 per week. Ordinarily the drivers would go by the office at day's end to settle for collection of fares and adjust their "tokens" account. The superintendent's desk is on the second floor of a building on Main street reached by steps leading from an entrance about thirty feet north of the northeast corner of Second and Main streets. Northbound buses on Main turn west on Second and stop near the northwest corner of the intersection.

Owens left his bus the evening of December 26, crossed the street, settled with the Company's assistant superintendent, and promptly left. He hurriedly remarked that the 6:24 bus was in sight and that he intended to catch it—presumptively to go home, as was his custom. In attempting to cross Main street, Owens walked diagonally southwest and was struck by a motorist who testified that he did not see the pedestrian until after the accident.

We have no difficulty in concluding that if Owens' injuries had been caused by the act of a third party after the bus had been boarded, or after he had reached a place that made him an actual or constructive passenger, liability under the Compensation Law would attach. To meet a situation where facts were analogous to those with which we are dealing, Minnesota amended its compensation law after the Supreme Court had held that an employe was not protected while being transported on a company truck between two of its plants. This result was necessary because the original Act, by express terms, limited liability to accidents that occurred "on the premises". The amendment extended coverage to employes to whom transportation was regularly furnished. Under this broader policy compensation was allowed an employe who was injured in a streetcar safety zone while awaiting transportation. The decision is based upon

legislative intent. *Radermacher* v. *St. Paul St. Ry. Co.,* 214 Minn. 427, 8 N. W. 2d 466, 145 A. L. R. 1027. The opinion of Mr. Justice Olson is summed up in the head-note he prepared, as follows: ''Where as an incident to the employment it is contemplated and understood by both employer and employe that the former will transport the latter to or from the place where the work is done, an accidental injury to the employe while thus being transported arises out of and in the course of the employment''.

An opinion by Chief Justice Brogan, *Micieli* v. *Erie Railroad Co.,* 131 N. J. L. 427, 37 A. 2d 123, (1944) expressed the view of the New Jersey Court of Errors and Appeals that an employe who is carried to and from his place of employment as part of his contract of service, or as a privilege incidental thereto with no deduction from his regular wages for such transportation, is considered by the weight of authority to be a servant and not a passenger. See 62 A. L. R. 1445; 145 A. L. R. 1035; *City and County of San Francisco* v. *Industrial Accident Comm.,* 61 Cal. App. 2d 248, 142 P. 2d 760. In the California case the Court said that where there was evidence that for a long period the municipal street railway had furnished transportation to its employes as an accepted condition of employment, the State Industrial Commission was not bound to accept printed statements on a pass issued to an employe to the effect that the pass was issued as a courtesy and not as part of the consideration for employment.

A different result was reached in another California case, *Dellepiani* v. *Industrial Accident Comm.,* 211 Calif. 430, 295 P. 827. The employe was injured while crossing a public street. The employer, Street Railway Company, had not engaged to deliver the employe to the place of his employment, or to his home after the day's work was done. The Company's undertaking was to furnish free transportation ''on its street cars as same are operated'' on and along the streets between the employe's home and the Company's premises upon which the worker was employed. The employe was run over

by a passing automobile and killed after he had left the street car and started to walk across the street to the carbarn—his place of employment. It was held that the employe was not under the direction, control, or protection of the employer; and, since he was free to choose any route of travel and any means of conveyance that might appear to him to be feasible and desirable to reach the premises of the employer, and the latter is without any right or authority to govern his movements during such period, it would not be accurate to say that the employe had either reached his employer's premises or that he was being conveyed thereto by his employer.

In circumstances where the principle involved was not at material variance with the *Dellepiani* case, recovery was denied in *De Voe* v. *N. Y. State Railways,* 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A, 250; *Ogden Transit Co.* v. *Industrial Comm.,* 95 Utah 66, 79 P. 2d 17, and in *Ex Parte Taylor,* 213 Ala. 282, 104 So. 527.

A tendency of Courts in most of the States is to deal with the particular case, from a factual standpoint, in the light of what employer and employe probably intended. And this is to be done without splitting behavior infinitives to a point where none of the subdivided parts bears the slightest relation to the original undertaking. But in Arkansas the Commission is the fact-finding agency, and we affirm its decisions when they are based upon substantial evidence, and when error of law does not appear.

An example of analytical progress by Courts is the so-called landmark decision in Massachusetts, *"Caswell's Case",* 305 Mass. 500, 26 N. E. 2d 328. The opinion was written by Judge Lammus, and has been spoken of as having avoided the paralyzing effect of an earlier Massachusetts decision, *In re McNicol's Case,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A 306. In Caswell's Case the employe was injured in an unprecedented manner. The City of Worcester was in the path of a hurricane, the severity of which caused windows to be broken in the fourth story of a building in which Caswell was working. When the wind entered the fourth

floor area through the demolished windows, its force disengaged bolts that anchored the roof to portions of the brick walls, causing disintegration of support on the southeast side, with the result that the roof fell into the fourth story area and injured Caswell. In approving compensation the Court said: "Unquestionably the injury was received in the course of his employment. The only other requirement is that the injury be one 'arising out of' his employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects".

The trend toward liberality of thought where parity of interests must be considered was emphasized by Mr. Justice Sutherland when he said: "The modern development and growth of industry, with the consequent changes in the relations of employer and employe, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common-law liability of the master for personal injuries to a servant, leaving of necessity a field of debatable ground where a good deal must be conceded in favor of forms of legislation, calculated to establish new bases of liability more in harmony with these changed conditions". *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532.[2]

The term "arising out of and in the course of" is not included in the definitions found in our Compensation Law, § 2. The omission was probably due to a feeling on the part of lawmakers that a tied-in construction would prove too vexatious for practical purposes because circumstances slight in themselves are often helpful in measuring conduct and intent. Hundreds of cases are cited in Words and Phrases, (4, pp. 18-147) showing how Courts have treated the words in the light of facts pertaining to a particular case. In some of the

---

[2] This case first went to the Supreme Court of Utah by writ of review through which the Cudahy Company sought to annul an Industrial Commission award in favor of Parramore's dependents.

jurisdictions it is said that there must be *causal* connection between employment and injury,[3] while others have said that *reasonable* connection must be established.[4]

In discussing "out of" and "in the course of" as used in compensation statutes, Mr. Justice Porter, *Haas* v. *Kansas City Light & Power Co.,* 109 Kan. 197, 198, P. 174, (1921) made the comment that American and British Courts had uniformly held that the terms were to be treated conjunctively. The Judge went back to the early case of *Fitzgerald* v. *W. G. Clark & Son,* (1908) 2 K. B. 796, quoting Buckley, L. J.: "The words 'out of and in the course of the employment' are used conjunctively and not disjunctively. Upon ordinary principles of construction they are not to be read as meaning 'out of'—that is to say, 'in the course of'. The former words must mean something different to the latter words. The workman must satisfy both the one and the other. The words 'out of' point, I think, to the origin or cause of the accident. The words 'in the course of' to the time, place and circumstances under which the accident took place. The former words are descriptive of the character and quality of the accident, the latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from the risk reasonably incident to the employment".  .  .  .  .  .  .

In Bradbury on Workmen's Compensation, 3d Ed., 468, and in 1 Honnold on Workmen's Compensation, par. 122, the rule is said to be that a man's employment does not begin until he has reached the place where he is to work or the scene of his duty, and that it does not continue after he has left the premises of his employer; and it is ordinarily held that if an employe is injured *on the premises of the employer* in going to or from work,

---

[3] *Industrial Commission of Ohio* v. *Weaver,* 45 Ohio App. 371, 187 N. E. 186.

[4] *Patterson* v. *S. S. Thompson, Inc.,* 12 N. J. Misc. 4, 169 A. 338.

he is entitled to compensation. But [Boyd on Workmen's Compensation, par. 486] the employment is not limited to the exact moment when the workman reaches the place where he begins his work or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before starting and after ceasing actual employment, "having in mind all the circumstances connected with the accident". And [Schneider, Workmen's Compensation, v. 1, p. 776, 2d Ed.] "Whether an employe in going to or from the place of his employment is in the line of his employment will depend largely upon the particular facts and circumstances of each case. There must necessarily be a line beyond which the liability of the employer cannot continue, and the question where that line is to be drawn has been held to be usually one of fact". See Elliott on Workmen's Compensation Acts, 7th Ed., 41.

The Cudahy-Parramore case to which attention has been called, and the remarks of Mr. Justice Sutherland when that controversy reached the Supreme Court of the United States, were cited by Mr. Justice Robins in *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579. An award in favor of George Summerville was sustained, the injury having occurred while the claimant was being transported in a sub-contractor's truck. The Commission had found that the course of conduct upon which liability was predicated placed the employer in the attitude of one who had tacitly acquiesced in the custom of his workmen who under their contract of employment were to be given transportation. The "tacit acquiescence" had reference to a departure from the general plan of riding in Hunter's trucks, as distinguished from one operated by a subordinate. Judge Robins' views on transportation liability were carried into his dissenting opinion in *Stroud* v. *Gurdon Lumber Co.*, 206 Ark. 490, p. 496, 177 S. W. 2d 181. He stressed the thought expressed by Mr. Justice Rutledge that if, in compensation claims (seamen in that case) leeway is to be given in either direction, "all the considerations which brought the liability into being dictate it should be in the sailor's behalf".

. . . . . .

Our review of the record in the appeal here decided discloses two essential facts: (a) After completing his settlement at the Company office Owens left immediately and was proceeding by the most direct route to catch the bus he customarily used in going home; and, like a large number of pedestrians were in the habit of doing, he "angled" across Main street, or was in the act of doing so when hit. (b) Free transportation was a part of the contract of employment, and it was mutually beneficial. Any doubt regarding its place in the Company's plan is dissipated with the testimony of J. O. Poss, superintendent.

Question on cross-examination: "When you employ a man do you [in connection with that employment] tell him that you will furnish transportation to and from work?" Answer: "No, I don't tell them that: I tell them we will furnish free transportation any time the bus is on the street" . . . Question: "Could you withdraw that right at any time you desired—your giving them free transportation?" Answer: "Well, I suppose we could, [but] I don't think we would want to".

A little later, on redirect examination, the witness said: "I don't believe I tell [prospective employes] anything at the time I employ them, about transportation. I instruct them after they are employed that they have a right themselves to ride the bus any time they desire, but that doesn't apply to anyone other than the employes, and policemen and firemen. Their families have to pay".

Another witness testified that Owens rode the bus home from work ninety percent of the time.

. . . . . .

Counsel for appellee correctly says that none of our cases is precedent for a holding that recovery can be had here. The problem is reduced in point of time to whether this trusted employe, with a service record of more than thirty years, had severed his day's connection with the Company when he left the office and hurriedly stated that the 6:24 bus was in sight. The

rule appears to be fairly well settled that if Owens, with transportation rights, had reached the bus, or had been within the sidewalk area where boarding was merely a formality, recovery would lie.

It is the intervening transaction, the attempt to cross the street, that presents our problem.

Of course, had there been a turning aside—any substantial deviation from a direct course adopted for personal reasons—the situation would be different. But see *Tinsman Manufacturing Company, Inc.* v. *Sparks,* 211 Ark. 554, 201 S. W. 2d 573, and the cases there cited, beginning at p. 563. Sparks left the master's bus when it stopped at Hampton, and in crossing the highway to purchase tobacco for himself he was struck by an automobile. It was held that the accident occurred "in the course of" the servant's employment.

We are not willing to say, in the circumstances of the case at bar, that the law must be so narrowed as to deny recovery while a customary act was being performed. It was too closely related to the employe's proven course of conduct—conduct known to the Company and impliedly if not actually acquiesced in by it. In effect the Company said to Owens, "Take your pass and go across the street to our bus; your day's work has been finished, and we are interested in seeing that you get home as expeditiously as possible".

The judgment is reversed. The cause is remanded to Circuit Court with directions that its mandate to the Commission be responsive to this opinion.