16

JOAQUÍN GALLART MENDÍA, MANAGER, ETC., Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; ANTONIA RAMOS WIDOW OF GONZÁLEZ ET AL., Interveners.

No. 600. Decided December 27, 1962.

18

*Donald R. Dexter* and *Carmen Ana Archeval* for petitioner. *Angel Manuel Ciordia* for interveners.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The Manager of the State Insurance Fund requests that we review the decision of the Industrial Commission of Puerto Rico, which grants compensation for the death of the worker Félix González Otero, which occurred when he fell and drowned in a river while he was going home from work after taking a shortcut at about one kilometer from the place of the road where his employer's vehicle, which provided transportation to and from work, had left him.

We believe the error assigned in this case—providing compensation—has not been committed. On the contrary, we reached the conclusion that the decision of the Commission should be affirmed.

The findings of fact on which the decision of the Commission is based are supported by substantial evidence presented in the corresponding hearing and therefore, we should accept them for the purpose of disposing of the case. *Cepeda* v. *Industrial Commission; Rivas, Int.,* 76 P.R.R. 750 (1954); *Colón* v. *Industrial Commission,* 59 P.R.R. 842 (1942).

The Commission decided that "the worker Félix González Otero lived in the ward of Morovis Norte of Morovis; that he worked with José Alicea in the latter's farm situated in the ward Franqui of Morovis; that the employer provided transportation for the workers from their home to work and vice versa; that a bus was used for this purpose which was operated by Antonio Alicea Fernández; that the deceased worker, in order to avail himself of the transportation which the employer provided, had to wait for the bus in a specific place, for otherwise no transportation would be provided him; that this was done for the employer's convenience because if the bus took another road in Morovis, the drive would have been longer and it would have to cross the town unnecessarily, for which reason it took the Vega Baja route, across a shortcut and out to ward Almirante Sur, and the workers used to wait for the bus in the Morovis to Corozal crossing.

"The evidence also showed that the worker's house was nearer Morovis than Vega Baja; that the usual road to reach his house was through Morovis, so much so, that all the normal and natural activities of the life of this family, such as purchasing food, clothes, and recreation, was done in the town of Morovis and not in Vega Baja.

"Likewise, the evidence showed that the worker, following the instructions of his employer who provided him transportation, could not use the ordinary road to Morovis, but that instead, he had to cross a piece of land, cross the river, in order to reach the place where his employer's bus was waiting. He had to take this road twice, in the morning when he took the bus, and in the afternoon when his employer's bus left him.

"There is no doubt that the worker benefited from the transportation provided by his employer, but since there was an agreement to provide said transportation, the employer derived much more benefit by requiring the worker to wait at a specific place chosen by the employer himself.

"On the day of the occurrence, that is, July 1, 1960, the worker went to work as usual. At the end of the day's work he took the employer's bus which would take him home. The bus followed the usual road from Vega Baja to Almirante Norte until it reached the Morovis-Corozal crossing, where it left the worker. The worker alighted, went on walking and when he was about to cross the river he slipped, apparently lost consciousness and drowned."

The parties agreed that if the worker's death was compensable, his dependents would be his widow, Antonia Ramos, and the minors Fernando, Ignacio, Carmen, Antonia, Florentina, and Luz Celenia González Ramos.

In view of the previously narrated facts the Commission decided that "the worker, in following his employer's instructions, exposed himself to an additional risk, to a constant, inherent and specific danger, such as crossing the river, and this fact in itself places him ... within the exceptions of the so-called 'street risks,' therefore his death occurred in the course of and arising out of his employment." On the contrary, appellant actually alleges that the worker's death occurred because of an accident comprised by the doctrine known as "the going and coming rule" and that since the accident occurred after the deceased had left the employer's vehicle, and had walked nearly a kilometer through a short cut to his home, the same is not compensable.

The brief analysis which we make below of the doctrine called "street risks" as well as the one called "the going and coming rule" leads us to the conclusion that in order to reach a decision in the case at bar pursuant to the Workmen's Accident Compensation Act,[1] and which at the same time

---

[1] 11 L.P.R.A. §§ 1-42.
"Section 2. *Workmen and employees covered by chapter*

"The provisions of this chapter shall be applicable to all such workmen and employees working for the employers to whom the following paragraph refers, as suffer injury, are disabled, or lose their lives by reason of accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work

reflects modern socio-economical approaches on workers' compensation,[1a] it is necessary to analyze the case on the basis of its particular circumstances and to determine the causal nexus between the accident and the nature and conditions of the employment.

■ Appellant argues that the applicable doctrine in this case is "the going and coming rule," which means, that accidents which occur when the worker is enroute to or from work are not compensable. *Figueroa* v. *Industrial Commission*, 72 P.R.R. 472 (1951); *Atiles, Mgr.* v. *Industrial Commission*, 72 P.R.R. 390 (1951); *Ríos* v. *Industrial Commission*, 66 P.R.R. 385 (1946).

■■ This rule, however, has been modified throughout the years by exceptions which deal with the particular circumstances of each case. Thus, the compensability of accidents occurred while going to or coming from work has been sustained if: (1) the employee is enroute to or from work in a vehicle owned, supplied, used or arranged by the employer whether in a company or private conveyance or "car pool" sanctioned by the employer; (2) the employee is subject to call at all hours or at the moment of injury; (3) the employee is traveling for the employer; (4) the employer pays in part or in whole for the employee's time involved in going to and from home; (5) the employee is on a special mission for the employer; (6) the employee is on the way home to do further work at home, even though he is on a fixed salary; or (7) the employee is required to bring his automobile to his place of business for use there. See HOROVITZ, *Workmen's Compen-*

---

or employment, and as a consequence thereof; or such as suffer disease or death caused by the occupations specified in the following section. Workmen and employees engaged in domestic service and those whose work is casual and is not included in the business, industry, profession, or occupation of their employer, and also such persons as work in their homes, are expressly excepted."

[1a] Legislation was recently presented for consideration to the Legislature in order to determine the manner in which the workers will be protected by law when they go to or return from work. See H. B. 335, presented in 1961, and which is still pending.

*sation: Half Century of Judicial Developments*, 41 **Neb.** L. Rev. 1 (1961) and 14 NACCA L. J. 36 (1954). The exception nearest to the facts of this case is that which covers the accidents occurred while riding home when the employer provides the transportation. It has been repeatedly held that these accidents are compensable. *Cf. Cordero, Mgr.* v. *Industrial Commission*, 60 P.R.R. 851 (1942); *Jasaitis* v. *City of Paterson*, 150 A.2d 55 (N.J. 1959); *Owens* v. *Southeast Ark. Transp. Co.*, 228 S.W.2d 646 (Ark. 1950); *Bailey* v. *Santee River Hardwood Co.*, 32 S.E.2d 365 (S.C. 1944). Notwithstanding having extended this exception to cases in which the accident occurs just before entering the vehicle provided by the employer, or shortly after alighting from it— *cf. Jasaitis* v. *City of Paterson, supra; Ward* v. *Cardillo*, 135 F.2d 260 (C.C.A.-D.C. 1943); *Radermacker* v. *St. Paul City Ry.*, 8 N.W.2d 466 (Minn. 1943); *Hant* v. *Gaseteria*, 12 N.E.2d 992 (Ind. 1938); 8 SCHNEIDER, Workmen's Compensation Text, § § 1747–1748—the facts of the present case do not call for the application of the "coming and going" doctrine.

■ The case of *Atiles, Mgr.* v. *Industrial Commission and De Jesús*, 64 P.R.R. 590 (1945), which deals with an accident suffered by a teacher enroute from work, is a very special one. In spite of the fact that the employer did not provide said transportation, said accident was held compensable since the injured teacher's work began every day from the time she left her house carrying books and school material until she returned home in the afternoon. In the cases of *Rios* v. *Industrial Commission*, 66 P.R.R. 385 (1946); *Figueroa* v. *Industrial Comm'n*, 72 P.R.R. 472 (1951); and *Atiles, Mgr.* v. *Industrial Commission*, 72 P.R.R. 390 (1951), we distinguished the *De Jesús* case due to "Special or extraordinary circumstances presented by same." Thus the general rule was reiterated that in the absence of exceptional circum-

stances, accidents suffered while the employee is going to or coming from work are not compensable.

It is difficult to justify compensation in this case, as the Commission held, on the grounds that the case falls "within the exceptions of the so-called street risks."

■ Originally, under the doctrine of "street risks" the courts in the United States adopted the theory that certain accidents which could be attributed to risk common to the public in general were not compensable because they were not peculiar to the work or employment. *Donahue* v. *Maryland Case Co.*, 116 N.E. 226 (Mass. 1917) ; *Colarullo's Case*, 155 N.E. 425 (Mass. 1927) ; 139 A.L.R. 1472. Despite considering this theory, those accidents which occur on public highways and which arise out of "street risks" are compensable when the nature of the work demands the worker's constant presence in the street, thereby exposing him to said risks with greater frequency. *Keaney's Case*, 122 N.E. 739 (Mass. 1919) ; *Central Surety & Ins. Corporation* v. *Court*, 36 S.W.2d 907 (Tenn. 1931). However, the doctrine of street risks has been recently interpreted in the sense that the accidents suffered by a worker in a public road are compensable if his presence thereat is due to his employment. *Emmanuelli* v. *Industrial Commission*, 69 P.R.R. 848 (1949) ; *Locke* v. *Steele County et al.*, 27 N.W.2d 285 (Minn. 1947) ; *Kennedy* v. *Thompson Lumber Co.*, 26 N.W.2d 459 (Minn. 1947) ; *Truck Insurance Exch.* v. *Industrial Accident Commission*, 167 P.2d 705 (Cal. 1946). Compensation in these accidents rests on the principle that according to the circumstances of the case there is a causal nexus between the work and the accident, that is, that the latter arises out of "any act or function inherent in their work or employment," such as provided by § 2 of the Workmen's Accident Compensation Act—11 L.P.R.A. § 2.

■ The doctrine of "street risks" is applicable to the cases where, because of the nature of the work, and while

the worker is engaged in same, he has to use a public road occasionally or frequently and in so doing, suffers an accident. *Cf. Manager of State Fund v. Industrial Comm'n*, 73 P.R.R. 14 (1952).

■ From the foregoing it appears that it is infinitely difficult to try to decide cases such as the present one through the application of determined rules or formulas. It is preferable, in our opinion, to analyze each case of this sort, according to its particular circumstances, according to the relationship or causal nexus which might exist between the injury and the employment, in the light of the broad and general rule established by law in providing compensation in cases of "accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work or employment, and as a consequence thereof." 11 L.P.R.A. § 2.

In the case of *Tromba v. Hardwood Manufacturing Co.*, 177 A.2d 186 (R.I. 1962), in which compensation was denied for damages due to a fall suffered by the employee on an icy sidewalk before reaching the place where she worked, because the accident had no relationship with the employment, the court stated:

"It seems clear then that the right to be compensated for incapacity resulting from an injury accrues to the injured employee *upon the establishment of a nexus between the injury and his employment. It would then be inappropriate to determine his right to compensation solely on the place at which the injury was sustained, whether such was off or on the premises of the employer.*" (Italics ours.)

In *Brousseau v. Blackstone Mills*, 130 A.2d 543 (N. H. 1957), in which compensation was also denied for damages suffered due to a fall on an icy sidewalk and in which no nexus whatsoever was proved between the accident and the employment, the court stated the following:

"The employment status may exist before actual work begins or continue after actual work has ceased... The fact that the

employee is traveling to or from work on a public way does not necessarily exclude coverage under the Workmen's Compensation Law... Generally speaking, however, *recovery has been allowed in off-the-premises cases only where there has been some particular risk which the employer could be said to have caused or allowed to exist."* (Italics ours.)

In *American Hardware Mutual Insurance Co.* v. *Burt*, 120 S.E.2d 797 (Ga. 1961), in which compensation was granted for injuries suffered by a drugstore delivery boy when driving a motor scooter provided by the employer to get said employee promptly to and from work at supper time, the court discarded the doctrine that "lunch hour cases" are not compensable, and decided that:

"Whether the transportation furnished is for the purpose of getting the employee promptly to work in the morning and home at night, or of getting promptly to and from the premises during the lunch hour period, is not in itself decisive, *the question being whether the furnishing of the transportation is a benefit to the employer and an incident of the employment contract. In this case it served both functions."* (Italics ours.)

In *Nelson* v. *City of Saint Paul*, 81 N.W.2d 272 (Minn. 1957), compensation was granted to a teacher injured on the knee by a ball batted by a pupil from the school playground while the teacher was enroute to school on one of its sidewalks, in spite of the facts that the applicable statute in that case did not cover employees "except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury." The court stated in this case that:

"An injury to be compensable must satisfy each of two companion requirements, namely, it must (1) 'arise out of' and (2) 'in the course of' the employment ... The phrase 'arising out of' the employment is expressive of the requirement that there must be a causal connection between the conditions which the employer puts about the employee and the employee's resulting injury. *The requisite causal connection... exists if the em-*

*ployment, by reason of its nature, obligations or incidents may reasonably be found to be the source of the injury-producing hazard. The causal connection of source is supplied . . . if the employment as a part of the working environment, peculiarly exposes the employee to an external hazard whereby he is subjected to a different and a greater risk than if he had been pursuing his ordinary personal affairs."* (Italics ours.)

■ "Although employee's injury arose out of the employment, we still have the issue of whether it arose 'in the course of' the employment. The phrase 'in the course of' employment refers to factors of time and place and means that an injury to be compensable must arise within the time and space boundaries of the employment."

Upon deciding in this case that the injury occurred within the limits of time and space of the employment, the court stated that:

*". . .whenever the hazards of employment spill over the boundary line and injure an employee on his way to work, his injury arises within the statutory space limitations of the employer's premises."* (Italics ours.)

See, also, *Lunn* v. *Columbian Steel Tank Company*, 275 S.W.2d 298 (Mo. 1955); *Giracelli* v. *Franklin Cleaners & Dyers*, 42 A.2d 3 (N.J. 1945); 15 NACCA L.J. 86–87 (1955); 14 NACCA L.J. 36 (1954), and the note titled *Workmen's Compensation Law in New England:* " *'Arising Out of' and 'In the Course of' the Employment"*, 42 B.U.L. Rev. 492 (1962).

■ In the case before us the Commission determined that (1) the deceased Félix González lived nearer Morovis than Vega Baja; the usual road to reach his home was through Morovis; therefore, all the normal and usual activities of the life of his family, such as buying food, clothes, and recreation were carried out in the town of Morovis; (2) the employer provided him transportation to and from work, from the Morovis-Corozal crossing; (3) the place where the employer's bus picked up or left the workers was chosen by the former at his own convenience, since the rest of the

workers lived nearby and besides, taking the deceased home via Morovis required a longer trip twice a day for only one worker; (4) in order to avail himself of the transportation provided by the employer, González could not use the ordinary road to Morovis but was obliged to use the shortcut and cross the river so as to reach the place where the employer's vehicle was waiting. It is evident, therefore, that to comply with one of the conditions of the employment the deceased had to pass through the aforesaid shortcut and that he was exposed to a specific risk which may be said to have been caused or permitted to exist by the employer and which did not exist respecting the ordinary and usual activities of the worker and his family. Since the causal nexus has been established between the accident and the work by reason of the circumstances of the transportation provided by the employer to the worker, and that the hazard created by the conditions of the employment crossed the boundary lines of the working premises, it is immaterial whether the risk to which the worker was exposed thereby and which caused his death arose at a certain distance from the place where the transportation began and ended, are not in its immediate surroundings. The circumstances in this case obviously differ from those in the case of *Guillot* v. *Industrial Commission*, 60 P.R.R. 658 (1942), in which we denied compensation for the death of a worker due to an accident on the public road while he returned home from work on his own bicycle. Rather, they resemble those of *Cordero, Mgr.* v. *Industrial Commission, supra*, where we granted compensation for the death of a worker while he tried to change from a moving vehicle to another one provided by the employer for his transportation. Although this case could be described as doubtful, we believe that within the liberal interpretation which must be given to the Workmen's Accident Compensation Act, any doubt must be decided in favor of the compensation. *Meléndez* v. *Industrial Commission*, 85 P.R.R. 54 (1962);

28

*Candelaria* v. *Industrial Commission*, 85 P.R.R. 18 (1962) ; *Atiles-Moréu, Mgr.* v. *Industrial Commission*, 85 P.R.R. 209 (1962) ; *Cordero, Mgr.* v. *Industrial Commission, supra.*

Therefore, we affirm the decision of the Industrial Commission in this case.