Rabin, J.
The issue raised on this appeal is the proper construction of section 599 of the Labor Law, concerning eligibility for unemployment insurance while in vocational training. The underlying, and controlling, question is whether unemployment insurance was meant to cover a situation where the claimant is technically ‘1 unemployed ’ ’ but yet is receiving funds from an employer-union source while in attendance at vocational training.
*314 Section 591 of the Labor Law, 1 ‘ Eligibility for benefits”, provides that in order to collect unemployment benefits a claimant must be 11 capable of work ’ ’ and ‘1 ready, willing and able to work”. During the period in issue here, the claimant Van Teslaar was attending a vocational training course sponsored by his union, the .Marine Engineers Beneficial Association (MEBA). Because this course was full time, five days a week from 9:00 a.m. to 4:30 p.m., claimant was not “ ready, willing and able to work ”, and would not be eligible to receive benefits were section 591 the only relevant section. Section 599 of the Labor Law provides for an exception to this rule by permitting unemployment benefits to be paid if the lack of readiness is caused by attendance at a vocational training course ‘ ‘ which the commissioner has approved and continues from time to time to approve for the claimant ’ ’. Van Teslaar attended the vocational training course from May 4, 1970 until September 14, 1970. While approving the course for the period following June 28, 1970, the commissioner did not approve the course for the period May 4 to June 28,1970, because during this period Van Teslaar received room and board plus $988 per month as a scholarship living allowance from a union trust fund. This program is financed by the MEBA Training Plan Trust which receives its funds from the employer ship-operators pursuant to a collective bargaining agreement with MEBA. The sum of $988 per month represents the .base wage of a third assistant engineer on a day shift. Though unemployed when he entered the training course, Van Teslaar ¡had previously been employed as a first assistant engineer.
With regard to approval of vocational training plans, section 599 provides, “ The commissioner shall give due consideration to existing and [prospective conditions of the labor market in the state, taking into account present and anticipated supply and demand regarding the occupation or skill to which the training course relates, and to any other relevant factor.’ ’ (Emphasis added.) The commissioner argues that the words “ any other relevant factor ’ ’ authorize him to consider such a factor as a claimant’s receipt of a training allowance from an employer-financed fund in an amount in excess of the claimant’s unemployment insurance benefit rate. Claimant and the amicus curiae, *315 citing the principle ejusdem generis (McKinney’s Cons. Laws of N. Y., Book 1, ¡Statutes,'§ 239, subd. b), argue that the words “ any other relevant factor ” refer only to factors relevant to the “ existing and prospective conditions of the labor market in the state ” and were not meant to include factors relevant to the situation of the individual applicant.
The Industrial Commissioner disapproved the application, finding that the source and amount of the vocational training living allowance were relevant. Following a hearing, a referee disagreed with this determination and allowed the claim, deciding Van Teslaar’s,receipt of funds was not relevant. The Unemployment Insurance Appeal Board adopted the referee’s decision. On judicial appeal, the Appellate Division reversed the appeal board, holding that the commissioner properly regarded claimant’s receipt of the funds -as a relevant factor in his decision. We affirm..
The controlling consideration is whether the overall legislative purpose of unemployment insurance, as evidenced throughout the statute, is best .served by interpreting the words “ relevant factor ” lin .section 599 to include a .claimant’s receipt of money from ¡an employer-financed fund. We have not been referred to any evidence indicating that the Legislature envisioned anything like the present situation when drafting this section. If the only proper considerations were the language and grammar of section 599, it would not be unnatural to conclude that at the time of drafting, the expression “ any other relevant factor ” referred to factors relating to the labor market. However, in interpreting a legislative enactment of broad social policy .such as unemployment insurance, the nuances of grammar and the maxims of .statutory construction must yield to overall legislative policy. (See People v. Kaye, 160 App. Div. 644, 647, affd. 212 N. Y. 407.) Here such policy dictates that section 599 be read so as to include as “ relevant ” the factor in controversy.
In enacting unemployment insurance, the Legislature declared its policy .as follows: “ Economic insecurity due to unemployment is a serious menace to the health, welfare, and morale of the people -of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires *316 appropriate action by the legislature to prevent its spread and to lighten its burden, which now so often falls with crushing force upon ¡the ¡unemployed worker and his family.” (Labor Law, § 501.) From this statement of purpose, it can be seen that the Legislature was primarily concerned with alleviating the adverse- financial condition that frequently accompanies loss of employment, or more precisely, the cessation of income from an employer as a result of1 loss of employment. With regard to the period in question, it is clear that Van Teslaar was receiving funds, that the source of these funds was an employer, and that the amount of this income was equivalent to what he would have received had he been working ¡as a third assistant engineer. The net effect is that for the period in question, Van Teslaar was working as a third assistant engineer on assignment to vocational training. Under these circumstances, it dpes not appear that any legislative purpose would be advanced by applying the exception contained in .section 599 to the claimant, and consequently, the receipt of these funds should be considered a 1 ‘ relevant ’ ’ factor in applying the exception.
The amicus argues that such a construction introduces a “ means test ” for eligibility, land that such a test is inappropriate in an insurance plan. The amicus is correct in emphasizing that the unemployment program is an insurance type plan, not a ‘1 public relief ’ ’ type plan. Unemployment benefits are not contingent upon a claimant’s actual need for them. The unemployed recipient of income from a prosperous private trust is eligible to receive benefits, and a poorly paid but employed laborer is not. Nevertheless, the source -of other income is significant (see Unemployment Appeal Board Case No. 135,427; cf. Labor Law, § 592, subd. 2). This is particularly so in applying section 599 of the Labor Law, which provides an exception to the usual requirement that an applicant be ready, willing and able to work. Where funds in amount of $988 per month plus room and board are received from essentially an employer source, the conceptual boundary between unemployment and employment is certainly blurred. Far from imposing a means test, our decision here merely allows the Industrial Commissioner and the appeal board to give 16 due consideration ’ ’ to this overlap in deciding whether to approve a claimant’s vocational training course.
*317 Under the application of the pertinent sections, a proper refusal to approve the course leads to the disallowance of the claim for the period at issue. If1 the course is not approved, the claimant may not preserve his eligibilty under the exception contained in section 599. For the period the exception was not applicable, Van Teslaar was not “ ready ” to work as required for eligibility by section '501, and could be denied unemployment benefits.
Petitioner also argues, with support from the dissent in the Appellate Division, that what is a “ relevant factor ” under section 599 is a question of fact, and therefore the decision of the Unemployment Insurance Appeal Board must be accepted on judicial appeal, so long as it is not arbitrary. (Labor Law, § 623.) On questions of fact, the appeal board’s determination is also conclusive against the Industrial Commissioner (Matter of Marsh [Catherwood], 17 A D 2d 527, affd. 13 N Y 2d 235). Thus, if the question involved here is thought to be a question of1 fact, the appeal board’s decision that claimant’s receipt of funds is not a relevant factor would overrule the contrary determination of the Industrial Commissioner, and would stand upon appeal since it could not be said to be arbitrary.
Whether tested by an analytical or practical approach, the issue presented on this appeal is a question of law upon which the Appellate Division was entitled to substitute its judgment for that of the Unemployment Insurance Appeal Board.
Since both .sides agree as to what occurred, but dispute the legal consequences of these agreed facts, the issue is not one of “fact” in the most literal meaning of that term. Neither is there any conflict as to the inferences of fact which can reasonably be drawn from the evidence. (See Cohen and Karger, Powers of1 the New York .Court of Appeals, § 108.) From an analytical standpoint, the instant question, whether it is proper to weigh a certain factor in arriving at a decision, is properly categorized as a question of law.
Nevertheless, we recognize that some questions also concerning the legal consequences ¡of agreed facts and undisputed inferences are more appropriately settled by the Unemployment Insurance Appeal Board (see, e.g., Matter of Marsh [Catherwood], *318 17 A D 2d 527, affd. 13 N Y 2d 235, supra). As stated by a leading commentator, ‘ ‘ In the context of judicial review of administrative action the term 1 question of fact ’ means an administrative question on which a reviewing court should not substitute judgment and the term ‘ question of law ’ means a question on which the reviewing court may properly substitute judgment. ’ ’ (4 Davis, Administrative Law, § 30.02, p. 193.) The issue in Marsh was “ factual ” in the sense that it was a question of discretion more appropriate for administrative rather than judicial resolution. There was no question of overall legislative policy or general statutory interpretation involved. The Legislature had left to the administrative agency the .specific application of ,a general verbal formula. The subject matter involved, whether an offered wage was “ substantially less favorable” than a prevailing wage, was one in which the administrative agency might be thought to possess greater expertise than a reviewing court. By contrast, the instant case presents issues more appropriate for judicial determination: interpretation of the overall policy of the Unemployment Insurance Law and general construction of statutory language. The resolution of these questions is not materially aided ,by administrative expertise and there is no other reason appearing for the courts to defer to the agency. In isum, the question whether the receipt of funds from an employer source was relevant in approving the course is a question of law, and the Appellate División was both within its power and correct in deciding in favor of relevancy.
Deciding that a factor is relevant, however, is significantly different ¡from deciding that it is controlling in all cases. The weight to be accorded this factor is a matter of agency discretion, a “ question of fact ” upon which the appeal board’s decision is conclusive unless arbitrary or an abuse of discretion. However, on the present facts, where the amount of the funds received is so greatly in excess .of the claimant’s benefit rate and the record discloses no significant countervailing factors, we hold that to approve the course would be an abuse of discretion as a matter of law. In the present case, therefore, the Industrial Commissioner’s determinations as to relevancy and weight are both correct as a matter of law.
*319 Accordingly, the order of the Appellate Division should be-affirmed, without costs.
Chief Judge Breitel and Judges Gabrielli, Jokes, Waohtler, Stevbks and Wither* concur.
Order affirmed.

 Designated pursuant to section 2 of article VI of the State Constitution.