OPINION OF THE COURT
Simons, J.
Claimant’s decedent, Norman Richardson, was employed by appellant, Fiedler Roofing, Inc. as a waterproofer and roofing mechanic. On January 20, 1981 he fell seven stories from the roof of a building near his jobsite sustaining head injuries which resulted in his death. Immediately before the accident, Richardson and a co-worker were at their work place on the roof waiting for material to arrive with no assigned work to do. While waiting, they moved some distance over the roof and across party walls to another part of the structure and removed some copper downspouts from the building to sell as salvage. While doing so, Richardson slipped on a patch of ice and fell to his death. Respondent Workers’ Compensation Board affirmed a finding of the Administrative Law Judge that the accident occurred during the course of decedent’s employment and that death was causally related to it and awarded benefits to decedent’s five minor children. A divided Appellate Division affirmed the decision of the Board, and the employer and its insurer appeal. They claim that the em *249 ployer should not be required to pay benefits because decedent was actually engaged in a theft at the time of his accident, and thus his death resulted not from his work duties, but from "decedent’s purely personal act of stealing copper downspouts.”
To be compensable, an injury must arise out of and in the course of employment (Workers’ Compensation Law § 10). Activities which are purely personal pursuits are not within the scope of employment and compensation may not be recovered for injuries sustained while engaging in them (Matter of Pasquel v Coverly, 4 NY2d 28, 31). The test for determining whether specific activities are within the scope of employment or purely personal is whether the activities are both reasonable and sufficiently work related under the circumstances (Matter of Capizzi v Southern Dist. Reporters, 61 NY2d 50, 55; Matter of Davis v Newsweek Mag., 305 NY 20, 24; Matter of Tyler v Gilbert, 29 AD2d 591). It has been held that an employee directed to wait for a specified period of time until materials arrive, is not required to stand by idly but is free to engage in any reasonably related activity while waiting (Matter of Anadio v Ideal Leather Finishers, 32 AD2d 40, 42, lv denied 25 NY2d 737; see also, Matter of Capizzi v Southern Dist. Reporters, supra, p 53). Momentary deviation from the work routine for a customary and accepted purpose will not bar a claim for benefits. The determination of what is reasonable activity and what is unreasonable, and thus a deviation, is factual and the Board is afforded wide latitude in deciding whether the employee’s conduct is disqualifying (Matter of Anadio v Ideal Leather Finishers, supra, p 42).
The Board found from the evidence in this case that it was common practice in the industry for roofers to remove copper downspouts and sell them for scrap. It further found that this employer not only knew of the practice but also frequently had been required to pay for or replace downspouts stolen by its employees. Despite this experience, the employer had never disciplined or discharged an employee for these thefts, and after it learned that decedent and his co-worker had been stealing downspouts on the day of the accident, it did not discipline or discharge the coemployee. Accordingly, the Board found that decedent’s activities while waiting for necessary work materials to arrive did not constitute a deviation from, or an abandonment of, his employment and that the death arose out of and in the course of decedent’s employment. These finding are supported by substantial evidence and thus *250 are conclusive on the court (Matter of Capizzi v Southern Dist. Reporters, 61 NY2d 50, 54, supra).
Indeed, appellants do not now challenge the Appellate Division’s finding that there was substantial evidence to support the award. They contend in this court, for the first time, that a claimant is excluded from compensation benefits, as a matter of law, if he is engaged in an illegal activity at the time of the accident. Normally, they would not be permitted to raise the issue when they challenged only the factual basis of the Administrative Law Judge’s finding that decedent had not deviated from the scope of his employment before the Board (see, Matter of Middleton v Coxsackie Correctional Facility, 38 NY2d 130, 132-133; Workers’ Compensation Law § 23). The argument raises solely a question of statutory interpretation, however, which we may address even though it was not presented below (see, Telaro v Telaro, 25 NY2d 433, 439; Cohen and Karger, Powers of the New York Court of Appeals, at 627-628 [rev ed]).
Appellants base their argument on policy grounds, urging that an employee who engages in illegal activity during his employment should not receive benefits. Appellants note that Workers’ Compensation Law article 9, the disability benefits section, expressly precludes benefits for non-work-related injuries caused by a claimant’s illegal acts (see, Workers’ Compensation Law § 201 [9] [A]; § 205 [3]), and they contend that section 10 of the statute, the liability provision for work-related injuries, should be interpreted as containing a similar limitation.* The history and nature of these two clauses prove otherwise.
In 1913, the Bill of Rights of the 1894 New York State Constitution was amended to give the Legislature the power to enact workers’ compensation legislation (see, 1894 NY Const, art I, § 19) and the next year the Legislature did so. The resulting statute provided that employees were to be *251 compensated on a "no-fault” basis, regardless of any negligence on their own part, for all injuries "arising out of and in the course of’ their employment (see, Workers’ Compensation Law § 10). To further the claimant’s ability to establish his right to benefits, the statute creates a presumption that the injuries are compensable (see, Workers’ Compensation Law § 21). The statute was enacted for humanitarian purposes, framed, in the words of Chief Judge Cardozo, to insure that injured employees might "be saved from becoming one of the derelicts of society, a fragment of human wreckage” (see, Surace v Danna, 248 NY 18, 20-21; see also, Matter of Winfield v New York Cent. & Hudson Riv. R. R. Co., 168 App Div 351, 352-353, affd 216 NY 284; and see, Minkowitz, Practice Commentary, McKinney’s Cons Laws of NY, Book 64, Workers’ Compensation Law § 10, pp 126-127 [1986 Cum Ann Pocket Part]). To further that purpose, we have held that the statutory obligation to compensate injuries sustained in the course of employment which are causally related to it does not depend on the equities of a particular case, nor may it be avoided because of the workers’ fraud or wrongdoing: it is absolute (see, Matter of Sackolwitz v Hamburg & Co., 295 NY 264, 268 [construing § 14-a]).
The exceptions to this broad statutory liability are found in section 10, derived from the 1913 amendment to the Bill of Rights. They bar compensation when the injury has been occasioned solely by intoxication of the injured employee while on duty or by willful intention of the injured employee to bring about injury or death (Workers’ Compensation Law § 10; compare, NY Const, art I, § 18; Matter of Sackolwitz v Hamburg & Co., supra; and see, Minkowitz, Practice Commentary, op. cit., p 127). Neither is applicable here.
The disability benefits provisions have an entirely different history and purpose. They were enacted in 1949 to expand the scope of the Workers’ Compensation Law by providing short-term weekly benefits to employees for sickness or disability not arising "out of or in the course of’ employment. We discussed the nature of article 9 in Matter of Flo v General Elec. Co. (7 NY2d 96, 99): "The Disability Benefits statute is broad in concept and general in terms. It was designed to assist the employee of the State who suffered disability by bridging the gap between the Workmen’s Compensation Law and the Unemployment Insurance Law. Unlike the Workmen’s Compensation Law, the Disability Benefits Law contains no requirement that the cause of a disability arise out of and *252 in the course of employment. It contemplates a broad social coverage to protect the employee against the hazard of sickness and disability which interfere with and prevent his continuance in active employment and which can occur and do occur both within and outside of working hours.”
Article 9 excludes benefits for several disabilities and disability periods (see, Workers’ Compensation Law § 205) and one of its provisions, section 205 (3), provides that benefits shall not be paid for a disability occasioned by the "perpetration by the employee of an illegal act”. That limitation is not duplicated in the provisions of the statute dealing with work-related injuries. Indeed, the only exception to liability that the disability benefits provisions and workers’ compensation provisions have in common is the provision which bars recovery for injuries caused by the employee’s willful intention to bring physical harm to himself or another (compare, Workers’ Compensation Law §§ 10 and 205). It is not claimed that that provision has application to this case and there is nothing else in the text of the statute, its legislative history, or in our case law, that supports the appellants’ claim that section 10 should be read to foreclose work-related death benefits in the same way that section 205 forecloses benefits for non-work-related injuries.
We have previously emphasized that the Workers’ Compensation Law is remedial in nature and must be "construed liberally to accomplish the economic and humanitarian objects of the act” (Matter of Holcomb v Daily News, 45 NY2d 602, 607). It is significant that although we have consistently interpreted the statute in this way (see, e.g., Matter of Sackolwitz v Hamburg & Co., 295 NY 264, supra, and cases cited therein), and the Legislature has amended and revised it repeatedly (see, Millus and Gentile, Time to Recodify the New York Workmen’s Compensation Law, 47 NYSBJ 655), the list of activities which will disqualify an employee from compensation for work-related injuries has remained unchanged for over 70 years. Indeed, despite this long history of liberal interpretation, when section 205 (3) was subsequently enacted barring disability benefits for injuries resulting from illegal acts, there was no effort to change section 10 to include a similar exception for work-related injuries. It is reasonable to assume from all of this that the Legislature did not intend section 10 to be similarly limited. And there is good reason why it should not. It is one thing to disqualify a claimant for injuries he sustains during the course of an illegal activity *253 pursued on his own time, an activity unknown to the employer and one which it cannot control. It is quite another to deprive dependents of benefits because the employee’s death results from misconduct during the course of employment when the employer knows about the illegal activity and tolerates it (compare, Matter of Chaffee v Effron, 1 AD2d 197, 198-199).
Although the appellants’ argument is based on moral grounds — the need to prevent parties from profiting from illegal acts — the suspicion is that the concern has more to do with dollars and cents than morality. The way for an employer to express dissatisfaction with its employees’ acts and also avoid paying benefits for such claims, however, is not for the Board to disqualify innocent dependents but for the employer to make clear to its employees that illegal conduct on the job will not be tolerated.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

 In 1981, when decedent died, Workers’ Compensation Law § 10 provided: "Every employer subject to this chapter shall in accordance with this chapter, except as otherwise provided in section twenty-five-a hereof, secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury, except that there shall be no liability for compensation under this chapter when the injury has been solely occasioned by intoxication of the injured employee while on duty; or by wilful intention of the injured employee to bring about the injury or death of himself or another.”