72 N.Y.2d 324 (1988)
In the Matter of the Claim of Mattiel Lemon, Claimant,
v.
New York City Transit Authority, Appellant. Workers' Compensation Board, Respondent.
Court of Appeals of the State of New York.
Argued May 31, 1988.
Decided July 7, 1988.
Steve S. Efron and Albert C. Cosenza for appellant.
Robert Abrams, Attorney-General (Howard B. Friedland, O. Peter Sherwood, Jane Lauer Barker and Theresa E. Wolinski of counsel), for respondent.
Chief Judge WACHTLER and Judges KAYE and BELLACOSA concur with Judge TITONE; Judge HANCOCK, JR., dissents and votes to affirm in a separate opinion in which Judges SIMONS and ALEXANDER concur.
*325 TITONE, J.
The familiar issue presented on this appeal is whether claimant's injuries arose out of and in the course of her employment. We conclude that claimant did not sustain a compensable injury.
Claimant, Mattiel Lemon, was employed as a conductor by the appellant, New York City Transit Authority, a self-insured *326 employer (see, Workers' Compensation Law § 50). She was assigned to the Woodlawn IRT No. 4 subway line, which operates between Woodlawn Avenue terminal in The Bronx and New Lots Avenue in Brooklyn. Claimant generally worked between the hours of 7:23 P.M. and 3:23 A.M., and was required to sign in and out at the beginning and end of each shift at the Woodlawn Avenue terminal. Since claimant resided in Brooklyn near the Utica Avenue station, an express stop on the No. 4 line, she commuted to and from Woodlawn Avenue by subway. As a transit worker, she was issued a transportation pass entitling her to travel the subways free of charge.
On December 15, 1983, claimant finished her shift at approximately 4:00 A.M. and signed out. Still in uniform, and carrying her transportation pass, she boarded a No. 4 Brooklyn bound train to go home. Claimant disembarked at the Utica Avenue station, passed through the turnstile, and fell while climbing the stairs leading to the street. She fractured her knee and was unable to return to work until May 1984.
Claimant sought workers' compensation benefits for lost time, but the Transit Authority contested the claim. After a hearing, however, claimant was awarded benefits, and the Workers' Compensation Board affirmed the Hearing Officer's findings, concluding that the accident occurred within the precincts of claimant's employment. The Appellate Division affirmed on the ground that the Transit Authority, by issuing free passes to its employees, "implicitly assumed the responsibility of transporting claimant to and from work" and was "in exclusive control of the conveyance on which the accident occurred" (128 AD2d 943, 944, 945). We now reverse.
An employee is entitled to receive benefits under the Workers' Compensation Law only for injuries "arising out of and in the course of the employment" (Workers' Compensation Law § 10 [1]; see also, § 2 [7]; § 21; Matter of Merchant v Pinkerton's, Inc., 50 N.Y.2d 492, 495). Given the remedial nature of the Workers' Compensation Law, we have consistently construed this requirement liberally, in order to effectuate "the economic and humanitarian" objectives of the act (Matter of Husted v Seneca Steel Serv., 41 N.Y.2d 140, 145; see also, Matter of Smith v Tompkins County Courthouse, 60 N.Y.2d 939, 941; Matter of Tallini v Martino & Son, 58 N.Y.2d 392, 395; Matter of Holcomb v Daily News, 45 N.Y.2d 602, 607).
Nevertheless, only if an injury flows as a natural consequence *327 of the employee's duties can it be said to arise out of the employment (Matter of Malacarne v City of Yonkers Parking Auth., 41 N.Y.2d 189, 193; see also, Matter of Connelly v Samaritan Hosp., 259 N.Y. 137, 139; Matter of McCarter v LaRock, 240 N.Y. 282, 285-286; Matter of Scholtzauer v C. & L. Lunch Co., 233 N.Y. 12, 14-15). Similarly, for an injury to occur in the course of employment, "`it must have been received while the employee was doing the work for which he was employed'" (Matter of Malacarne v City of Yonkers Parking Auth., supra, at 193, citing Matter of Scholtzauer v C. & L. Lunch Co., supra, at 14-15). "A purely fortuitous coincidence of time and place is not enough. There must be" a causal relationship or nexus between the accident and the employment (Matter of Connelly v Samaritan Hosp., supra, at 139).
The question here is whether claimant's journey to and from work should be characterized as part of the service performed by the employee. The well-established rule is that "employees are not deemed to be within the scope of their employment while" commuting, since "the risks inherent in traveling to and from work relate to the employment only in the most marginal sense" (Matter of Greene v City of New York Dept. of Social Servs., 44 N.Y.2d 322, 325; Matter of Malacarne v City of Yonkers Parking Auth., supra, at 194; Matter of Husted v Seneca Steel Serv., supra, at 142; cf., Matter of Davis v Newsweek Mag., 305 N.Y. 20, 23-26 [no compensation for injuries arising out of purely personal activities]).
We have recognized a number of exceptions to this general rule. As long as there existed some reasonable nexus between the risk to which a claimant was exposed and the employment, recovery has generally been upheld, even though the injury was sustained while traveling to or from work (see, e.g., Matter of Holcomb v Daily News, 45 N.Y.2d 602, supra; Matter of Husted v Seneca Steel Serv., supra; cf., Matter of Greene v City of New York Dept. of Social Servs., supra [employee required to travel to clients' homes]; Matter of Malacarne v City of Yonkers Parking Auth., supra [assault on employee]; Matter of Seymour v Rivera Appliances Corp., 28 N.Y.2d 406, 409 [injury compensable if nexus exists between assault on employee and employment]; Matter of Field v Charmette Knitted Fabric Co., 245 N.Y. 139 [employee's injuries sustained in fight with another employee on street compensable when quarrel began on employer's premises]).
*328 We agree, however, with the Transit Authority that none of the exceptions to the general rule are applicable here. According to her own testimony at the hearing, claimant's duties ended when she signed out of work at approximately 4:00 A.M. at the Woodlawn terminal in The Bronx. She was injured 1 hour and 20 minutes later while climbing the stairs on her way home at the Utica Avenue station in Brooklyn. Given the remoteness in terms of time and space from the Woodlawn terminal, we can see no reasonable connection between claimant's injury and her employment.
Primarily relying on our decision in Matter of Holcomb v Daily News (45 N.Y.2d 602, supra), the Workers' Compensation Board argues that this accident was compensable because the transportation pass issued by the Transit Authority effectively made the employee's journey to and from work a part of claimant's employment. Such an assertion is untenable, since it ignores our prior holdings.
In Matter of Murphy v New York City Tr. Auth. (33 N.Y.2d 878, affg 38 AD2d 346), and Tallon v Interborough R. T. Co. (232 N.Y. 410), we were faced with factual scenarios almost identical to the one before us. In Murphy, a Transit Authority token clerk completed his shift and, using a transportation pass, took the subway home without paying the fare. He was injured while descending the stairs to the street. Compensation was denied on the ground that the employee "`had completed his tour of duty, was on his way home, by route of his own choice, and had traveled a distance from his assigned place of work, removing him from the precincts of his place of employment'" (38 AD2d, supra, at 347). Similarly, in Tallon, a subway guard took the train to work using his employee's pass and was killed when the train he was riding collided with another train. We concluded that inasmuch as his death occurred before he reported to work, the accident was not compensable. We find these cases determinative here, and nothing we said in Holcomb mandates a contrary result in this case.
We agree with the Board that Holcomb represents an exception to the general rule that injuries sustained by an employee while commuting to and from work are not compensable, but find the Board's argument that Holcomb is applicable to the facts of this case unpersuasive. Under the rationale of our older cases, if an employer had a contractual duty to transport its workers to and from work, injuries sustained as *329 a result of the journey were compensable. If the employer, however, voluntarily provided its employees with transportation to and from work, any injuries sustained during the commute would not be compensable (see, Matter of Holcomb v Daily News, supra, at 605-606). In Holcomb, we abolished the traditional distinction between custom and contract, holding that "[a]n employer who assumes by custom or contract the responsibility to transport his employees must likewise bear the responsibility for the risks encountered in connection with the transportation. This is especially true when the employer is in exclusive control of the conveyance" (id., at 606-607). However, Holcomb in no way alters the fundamental principle of the Workers' Compensation Law, which requires that for an injury to be compensable, there be some nexus between the accident and the employment.
In Holcomb, the record indicated that the Daily News had an established custom of permitting its truck drivers to regularly provide other News employees rides to work on its trucks. The company's supervisors and dispatchers were aware of this practice, and the testimony indicated "that supervisors had gone so far as to criticize drivers for not having picked up employees" (id., at 605). Significantly, the record also contained findings of fact indicating that the employer actually derived a benefit from this practice. For these reasons, we upheld the Board's determination that the Daily News had an established custom of transporting its workers, and that this practice was of some benefit to the employer, thereby rendering "the transportation an incident of the employment" (id., at 607).
The facts of Holcomb bear little resemblance to the facts before us now. Although claimant was permitted to travel on the subways free of charge, there is absolutely no evidence in the record to indicate that the Transit Authority assumed an obligation, either by contract or custom, to facilitate her travel to and from work (see, Matter of Kowalek v New York Consol. R. R. Co., 229 N.Y. 489, 492-493). Moreover, noticeably absent from the record before us is any finding that the Transit Authority derived any benefit because claimant utilized her pass to commute to and from work. The pass was a fringe benefit, equivalent to added compensation, that could be used by Transit employees as they wished. Use of these passes was not limited to commuting, nor could we reasonably expect the Transit Authority to know which of its thousands of workers used the pass for that purpose. As we stated in *330 Matter of Kowalek v New York Consol. R. R. Co. (supra, at 492-493), in exercising the right to use the subways, claimant made her own free choice whether to use the pass for commuting "and served [her] own convenience. The company was indifferent as to the way or means by which [s]he reached the place where the day's work began." (See also, Tallon v Interborough R. T. Co., supra.)
The Utica Avenue station could not have been within the precincts of claimant's employment at the time of the accident, since her employment had terminated at 4:00 A.M. when she signed out of work in The Bronx. That claimant was employed by the Transit Authority, which provides mass transit services for the City of New York and was, therefore, in control of the stairs at Utica Avenue where the accident occurred, does not alter the relationship between claimant and the Transit Authority at the time of the accident. Claimant was a commuter, not an employee, using the subways as thousands of others do every day (Tallon v Interborough R. T. Co., supra). "[I]n a very technical and artificial sense", it is true that claimant was on her employer's premises when she was injured, but realistically, claimant was using the subway just as any other member "of the public, whether they have free passes or not" (1 Larson, Workmen's Compensation Law § 17.20, at 4-223). That claimant also coincidentally was an employee of the Transit Authority, standing alone, is not sufficient to create a relationship between her accident and her employment.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the claim dismissed.
HANCOCK, JR., J. (dissenting).
I would affirm. The Workers' Compensation Law was enacted by the Legislature for economic and humanitarian reasons to protect employees and their families by providing "no-fault" recovery for injuries arising out of and in the course of employment (Matter of Richardson v Fiedler Roofing, 67 N.Y.2d 246, 250-251; Surace v Danna, 248 N.Y. 18, 20-21). To carry out this purpose and to implement the underlying legislative policy, the Legislature created the Workers' Compensation Board and entrusted it with the authority of determining whether particular claims are compensable (see, Workers' Compensation Law §§ 10, 20). Respecting this broad delegation of authority, we have consistently held that the Board's factual findings and the inferences it draws therefrom are conclusive on the courts if *331 supported by substantial evidence (see, Matter of Richardson v Fiedler Roofing, supra, at 249-250; Matter of Malacarne v City of Yonkers Parking Auth., 41 N.Y.2d 189, 193). Even where the facts are undisputed, the Board's determination of whether a particular injury is compensable is a mixed question of law and fact which is beyond our review unless it lacks a rational basis or is based on erroneous legal principles (see, Matter of Fisher [Levine], 36 N.Y.2d 146, 150; Matter of Van Teslaar [Levine], 35 N.Y.2d 311, 317-318; see also, Matter of Richardson v Fiedler Roofing, supra). Here, I believe that the Board's determination that claimant is entitled to compensation is rational, consistent with established case law, and supported by substantial evidence. I, therefore, respectfully dissent.
On December 15, 1983, claimant, an employee of appellant Transit Authority, completed her shift at the Woodlawn Avenue station and, using her employee pass, boarded a Transit Authority train. After disembarking at the Utica Avenue station, claimant, while climbing the subway stairs, slipped, fell, and injured her knee. Following a hearing, the Referee found that claimant was still on her employer's premises when she was hurt and that, therefore, she was entitled to compensation. On appeal the Board affirmed the Referee's decision. It found that although claimant had completed her tour of duty she was still in uniform and was a representative and agent of the Transit Authority, that claimant had traveled to the Utica Station using the free pass supplied by the Transit Authority, that the accident occurred on the employer's premises and in the precincts of employment and that, therefore, the injury arose out of and in the course of employment. On appeal the Appellate Division affirmed the Board's determination.
The Board's conclusion accords with existing precedents. The general rule is that an injury sustained on the employer's premises while going to or coming from work is compensable as arising out of and in the course of employment (see, Matter of Husted v Seneca Steel Serv., 41 N.Y.2d 140, 142; Matter of Bennett v Marine Works, 273 N.Y. 429, 431; Matter of De Voe v New York State Rys., 218 N.Y. 318, 320; Matter of Leatham v Thurston & Braidich, 264 App Div 449, affd 289 N.Y. 804; Matter of Torio v Fisher Body Div., 119 AD2d 955, 956; Matter of Thompson v New York Tel. Co., 114 AD2d 639; Matter of Grimaldi v Shop Rite Big V, 90 AD2d 608; Matter of McGrath v Chautauqua County Home, 31 AD2d 557; Matter of Babkees v Electrolux Corp., 4 AD2d 710). That the accident actually *332 happens within the confines of the employer's property is not, however, a sine qua non of recovery. The Board, in its discretion, may find that injuries to employees going to or coming from work which happen in areas adjacent to or near the employer's property  e.g., an adjacent parking lot or the public highway outside the gate where the employees turn in  may be compensable (see, Matter of Husted v Seneca Steel Serv., supra, at 144-145; Matter of Brooks v New York Tel. Co., 57 N.Y.2d 643, affg for reasons below 87 AD2d 701; Matter of Marquette v New York Tel. Co., 122 AD2d 479, 480; Matter of Bernard v Holiday House, 110 AD2d 941; Matter of Borelli v New York Tel. Co., 93 AD2d 940; cf., Matter of Holcomb v Daily News, 45 N.Y.2d 602, 606-607 [compensation awarded to employee injured some distance from place of work while using transportation customarily provided by employer]).
Here, the Board found that, when she was injured, claimant was not only still "within the precincts of the employment", but also that she "was wearing her uniform at the time [which] makes her a representative and agent of the employer from whom directions could be asked by members of the traveling public". The Board also noted that claimant had utilized the free pass provided by the Transit Authority to travel from the Woodlawn Avenue station to the Utica Avenue station. The Board's determination that, based on these facts, claimant's accident arose out of and in the course of her employment is consistent with the above principles and should be affirmed.
As the basis for its decision to overrule the Board the majority relies on older decisions of our court in Matter of Kowalek v New York Consol. R. R. Co. (229 N.Y. 489) and Tallon v Interborough R. T. Co. (232 N.Y. 410) and our affirmance in Matter of Murphy v New York City Tr. Auth. (38 AD2d 346, affd no opn 33 N.Y.2d 878). These cases, in my view, are no longer good authority. They held that transit or railroad employees injured while using free passes on their employer's transportation facilities in going to or from work were not entitled to compensation because: (1) the transportation was not provided as part of the contract of employment, the employee was free to use other methods of transportation, and the employer was indifferent as to what means was used, and (2) the transportation facilities were not provided exclusively for the employee's use but for the benefit of the general public (see, Tallon v Interborough R. T. Co., supra, at 415; Matter of Kowalek v New York Consol. R. R. Co., supra, at 493). Recent *333 decisions of our court have undercut the validity of these reasons.[1]
In Matter of Holcomb v Daily News (45 N.Y.2d 602, supra) we replaced the inflexible Matter of Kowalek-Tallon rule requiring that the transportation be part of the employment contract with "a more rational and sensible" one allowing recovery where the employer has "a frequent and regular practice" of providing such transportation (45 NY2d, supra, at 606-607). The basis for the rejected contractual rule  the employer's indifference and the employee's freedom of choice  must logically be deemed to have been rejected as well.
The second reason for denying recovery in the older cases  that the transportation facilities were open to the general public  has also been abandoned. In Matter of Husted v Seneca Steel Serv. (41 N.Y.2d 140, 144, supra) we held that the mere fact that an accident occurs in an area open to the public does not necessarily negate the right to compensation. Moreover, in Matter of Holcomb (supra, at 607) we stated that it "would make little sense to negate the employer's obligation" solely because the method of conveyance "used to transport the employees is at the same time used for another purpose" (see also, Matter of Brooks v New York Tel. Co., 57 N.Y.2d 643, supra; Matter of Marquette v New York Tel. Co., 122 AD2d 479, supra; Matter of Borelli v New York Tel. Co., 93 AD2d 940, supra; Matter of Berry v Gertz, Inc., 21 AD2d 708).[2]
Even though I believe that Matter of Holcomb and the fact that the transportation was furnished by the employer would support a finding of compensation here, it is unnecessary to rely solely on Matter of Holcomb because the Board's findings that claimant was still within the precincts of her employment *334 and that she was still an agent of the Transit Authority at the time of the accident provide independent grounds for allowing recovery. But, in any event, I see no valid basis for distinguishing Matter of Holcomb. The key factor in Matter of Holcomb was that the employer regularly and frequently, albeit informally, supplied its employees with transportation to and from work. Here, it is not disputed that the Transit Authority had a formal policy of providing its employees with a pass so that they could ride its trains for free and that at the end of the workday the employees would use it to travel home.
Order reversed, etc.
NOTES
[1] It should be noted that the majority's position and the principles it relies on are opposed to the weight of American authority (see, 14 Am Jur 2d, Carriers, § 759; 82 Am Jur 2d, Workmen's Compensation, § 256; Owens v Southeast Ark. Transp. Co., 216 Ark 950, 228 SW2d 646; City & County of San Francisco v Industrial Acc. Commn., 61 Cal App 2d 248, 142 P2d 760; Radermacher v St. Paul City Ry. Co., 214 Minn 427, 8 NW2d 466; Micieli v Erie R. R. Co., 131 NJL 427, 37 A2d 123; Brown v Pittsburgh Rys. Co., 197 Pa Super 68, 177 A2d 5 [equally divided court]).
[2] Moreover, it should be noted that Tallon v Interborough R. T. Co. (232 N.Y. 410) was a negligence case and in Matter of Murphy v New York City Tr. Auth. (38 AD2d 346, affd 33 N.Y.2d 878) the Board determined the claimant was not entitled to recovery. Thus, in neither case were we required, as here, to reject the Board's decision in order to reach our holding of no recovery.