(June 15, 1989)

■ In the Matter of the Claim of DOLORES OEHLEY, Respondent, v SYRACUSE BOYS CLUB et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Mahoney, P. J. Appeals (1) from an amended decision of the Workers' Compensation Board, filed August 10, 1987, which held that the death of claimant's decedent arose out of and in the course of his employment and awarded workers' compensation benefits, and (2) from a decision of said Board, filed August 20, 1987, which denied the employer's application for a rehearing and full Board review.

---

On July 10, 1979, claimant's decedent was working at a fund-raising auction at the Drumlins Country Club in the Town of Dewitt, Onondaga County, sponsored by his employer. Decedent left the auction at about 11:30 P.M. and was not seen again until the police discovered his body on July 15, 1979. Medical testimony disclosed that he had died from a skull fracture on or about July 11, 1979. The only alleged eyewitness to the death was Christopher Edwards, who was eventually convicted of murdering decedent *(see, People v Edwards, 97 AD2d 987, affd 64 NY2d 658).*

Claimant thereafter filed a claim seeking workers' compensation death benefits. In November 1984, a hearing was held at which the following sequence of events was established. Decedent was drinking while working at the auction sponsored by his employer but was not intoxicated when he left the premises at about 11:30 P.M. on July 10, 1979. On July 14, 1979, Detective Paul Carey of the Onondaga County Sheriff's Department learned that decedent's car had been found in a wooded area on the Onondaga Indian Reservation, where decedent had worked as a missionary prior to working for the employer. On the following day a search party, led by Carey, came upon blood-stained clothing, a partial set of blood-stained dentures and a blood-stained rock. Later that day they found decedent's body in an isolated area a few miles from where the car had been discovered. Decedent was wearing only a shirt pulled up to his chest. The autopsy report stated that decedent died from a compressed skull fracture and that his blood alcohol level was .198%.

The investigation into the cause of decedent's death implicated Edwards. Andy Deer, a resident of the reservation, testified that between 11:30 P.M. and midnight on July 10, 1979, Edwards drove to his house in decedent's car and stated that he had been picked up by a man seeking sexual activity and that they had driven to the reservation for that purpose. Edwards told Deer that during the sexual activity, he picked up a rock and hit the man in the head. Deer testified that he contacted the police after learning about Edward's involvement in decedent's death. Various witnesses identified Edwards and decedent as homosexuals.

In disallowing the claim, the Workers' Compensation Law Judge held, "Based on all the credible evidence and documents in the file, I find that [decedent] was not within the course of his employment * * * when he met his death." A majority of the Workers' Compensation Board reversed this determination and restored the case to the calendar for an

award of benefits. Thereafter, the Board amended its decision and found that decedent was an inside worker who was on his way home from a "special errand" for his employer at the time of his death. Disregarding Deer's testimony as not credible, the Board found no deviation from employment and applied the presumption that decedent's death arose out of and in the course of employment (Workers' Compensation Law § 21 [1]) so that claimant was entitled to benefits. The employer then submitted an application for a rehearing and full Board review based on a written statement from Edwards indicating that decedent had deviated from his course home after leaving the auction. The Board denied the employer's application. The employer appeals from the Board's amended decision and from the denial of its application for a rehearing and full Board review. We reverse the award of benefits to claimant.

While the general rule is that "risks of travel to and from employment are not incidents of employment * * * 'an exception exists for employees directed to perform a "special errand" or service for their employer' " (Matter of Bennett v G. O. Dairies, 114 AD2d 574, 575, quoting Matter of Junium v Bazzini Co., 86 AD2d 690; see, Matter of Maisel v Pepsi-Cola Bottling Co., 124 AD2d 332, 332-333). A special errand involves undertaking work or travel not associated with an employee's normal place and time of work (see, Matter of Junium v Bazzini Co., 86 AD2d 690, supra). Coverage for employees on special errands is "portal-to-portal" (Matter of Charak v Leddy, 23 AD2d 437, 438) but cannot be applied where there is a deviation, which turns on "whether the activities are both reasonable and sufficiently work related under the circumstances" (Matter of Richardson v Fiedler Roofing, 67 NY2d 246, 249). Without this limitation, special errand employees would be covered regardless of their activities, which could encompass personal trips abroad for example, until they return home from work. This result would be neither logical nor consistent with the rules for outside workers, to whom special errand workers are considered analogous (see, Matter of Weinstein v 16 E. 58th St. Corp., 92 AD2d 678; Matter of Charak v Leddy, supra; 1 Larson, Workmen's Compensation §§ 16.10-16.12).

In this case, decedent's work at the auction was beyond his usual responsibilities as a program director. Carey testified that based on his investigation, he was able to establish that the homicide occurred in a field south of a dam on the Onondaga Indian Reservation. Claimant testified that in July

1979 she and decedent lived in the southern part of the City of Syracuse and one would not travel through or near the Onondaga Indian Reservation when traveling from the Drumlins Country Club, the site of the auction, to their residence. Edwards told Deer that he and decedent were at the probable murder site for homosexual activity, and that it was at that location where he struck decedent in the head with a rock. Aside from this testimony by Deer, which was not credited by the Board, there was other evidence, albeit hearsay but not specifically rejected by the Board, that decedent and Edwards were homosexuals who had been sexually involved, that decedent owed Edwards money and that Edwards was violent. The evidence of decedent's .198% blood alcohol level, when coupled with the testimony that he was not intoxicated at the auction, indicates that decedent had engaged in intensive drinking after leaving the auction.

Based upon these facts we conclude that decedent's death did not occur while he was on a special errand because he had deviated therefrom. The Court of Appeals has stated, "An accident does not arise 'out of' an employment when it has been occasioned by some merely personal indulgence or gratification" (Matter of Pasquel v Coverly, 4 NY2d 28, 31). Thus, if decedent were on a special errand at the auction and entitled to coverage for travel to and from it, such coverage ended when decedent's personal meeting with Edwards and/or his subsequent drinking commenced, as these acts were far outside his work at the auction or reasonable incidents to his trip home. Stated simply, " 'The trip lost its "identity" as part of the decedent's employment' " (supra, at 31, quoting Matter of Pasquel v Coverly, 3 AD2d 346, 351 [dissenting mem], revd 4 NY2d 28, supra). Decedent's deviation from his trip home constitutes conduct which we hold not compensable (see, e.g., Matter of Gibbs v Orange County Sheriff's Dept., 149 AD2d 845). As this court said when addressing facts similar to those herein in Matter of McGinn v Jack Chambers, Inc. (46 AD2d 701, 702), "Thus, in our view * * * there is substantial evidence in the hearsay statements and the inferences reasonably drawn from the circumstances to support the conclusion that the presumption that the death arose out of the employment was overcome." Having determined that the amended decision of the Board must be reversed, we need not address the decision which denied the employer's application for a rehearing.

Amended decision filed August 10, 1987 reversed, claim dismissed, and appeal from decision filed August 20, 1987

dismissed, as academic, with costs against the Workers' Compensation Board. Mahoney, P. J., Kane, Weiss, Levine and Harvey, JJ., concur.