In the Matter of the Claim of JANIS MINTIKS, as Administrator of the Estate of HELEN H. MINTIKS, Deceased, Appellant, v METROPOLITAN OPERA ASSOCIATION, INC., et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, January 4, 1990

APPEARANCES OF COUNSEL

*Kravitz & Becker (Lester J. Kravitz, Michael J. Becker* and *Casey A. Fundaro* of counsel), for appellant.

*Weiss & Wexler (Louis R. Salvo* of counsel), for Metropolitan Opera Association, Inc. and another, respondents.

**OPINION OF THE COURT**

LEVINE, J.

On July 23, 1980, decedent, an accomplished violinist, performed at the Metropolitan Opera House (hereinafter Met) in New York City as a member of an orchestra engaged to accompany the Berlin Opera Ballet. At 9:30 P.M., during an intermission in the performance, decedent left the orchestra pit and never returned. It was later discovered that decedent had been brutally murdered on the roof of the Met. Craig Crimmins, a stagehand employed by the Met, was subsequently convicted of killing decedent *(People v Crimmins,* 99 AD2d 439, *affd* 64 NY2d 1072).

The events leading to decedent's death were pieced together by evidence obtained from claimant (decedent's husband), other performers who saw decedent prior to her disappearance, the investigation by the police and Crimmins' written

confession. Based on this evidence, it was determined that during the intermission decedent was looking for Valery Panov, one of the principal dancers and choreographers for the Berlin Opera Ballet. Decedent wanted to arrange a meeting between Panov and her husband, who is a sculptor, to discuss various scene and set designs.

In her attempt to locate Panov, decedent boarded an elevator backstage. Riding the elevator with decedent was Crimmins. While on the elevator, Crimmins said something to decedent which prompted her to slap him. When the elevator stopped on the second floor, both decedent and Crimmins exited and Crimmins ordered decedent to walk with him to a rear stairwell where they descended approximately five flights to a subbasement level. There, Crimmins produced a hammer and, after decedent removed her clothes, attempted to rape her. Crimmins then directed decedent to get dressed and to begin walking upstairs to the roof. On the roof, Crimmins tied decedent up with a rope. Crimmins had started to leave when he noticed that decedent had freed her legs and was running away. He caught her and brought her back to the same spot and retied her feet. Crimmins then carried decedent to a ledge near an air-conditioning fan, removed her shoes, cut off her clothing, gagged her, and laid her flat on her stomach on the ledge. Crimmins threw decedent's clothing and pocketbook down the side of the air-conditioning shaft. As he was leaving, decedent again began to struggle to free herself, at which point Crimmins returned to where decedent was and kicked her off the ledge. Decedent died as a result of the injuries sustained in the fall.

In August 1980, the Met filed a C-2 "Employer's Report of Injury" form with the Workers' Compensation Board and the Board indexed a death claim in the matter. Thereafter, claimant entered a special appearance challenging the jurisdiction of the Board on the grounds that decedent was an independent contractor and not an employee of the Met, and that her assault and murder did not arise out of or occur in the course of any employment.

Claimant also commenced a wrongful death action against the Met in Supreme Court, New York County. This action was stayed pending a final determination of the workers' compensation case.

A hearing was held before a Workers' Compensation Law Judge which resulted in an award of death benefits based

upon a finding that decedent was an employee of the Met and that the accident and death arose out of and in the course of her employment. Claimant appealed this decision to the Board. On appeal, the Board affirmed the award, based on its determination that an employment relationship existed and that the assault occurred in the course of decedent's employment and, therefore, is presumed to have arisen out of her employment *(see,* Workers' Compensation Law § 21). This appeal by claimant ensued.

■ Claimant contends that the Board's determination that an employer-employee relationship existed is not supported by substantial evidence. We disagree. There was evidence adduced that decedent was on the Met's payroll and that the usual withholding taxes were deducted from her earnings. The Met had also obligated itself to provide workers' compensation insurance for the orchestra members. Moreover, the evidence indicates that the Met exercised significant control over decedent's hours and the manner in which she was to perform. Although conflicting inferences could be drawn from the evidence, this court's review is limited to determining whether the record contains substantial evidence to support the Board's finding *(see, Matter of Davison v Holder,* 137 AD2d 899, 900), and we conclude that it does.

■ Claimant also contends that the Board erred in determining that decedent's death arose out of and occurred in the course of her employment. As to whether the assault occurred in the course of decedent's employment, the Board determined that decedent was on a break between performances at the time of the incident and that her activity in leaving the orchestra pit to locate Panov was reasonable and did not constitute a deviation from her employment. We are not persuaded that the Board's conclusion on this point was in any way improper *(see, Matter of Richardson v Fiedler Roofing,* 112 AD2d 551, *affd* 67 NY2d 246).

■ Having determined that the assault occurred "in the course of" decedent's employment, the Board relied on the presumption in favor of compensability *(see,* Workers' Compensation Law § 21) as the basis for its decision that the assault also "arose out of" the employment. The Board also stated in its decision that "[w]ere it not for the employment, she [decedent] would not have been in a position which became not only dangerous, but which ultimately became fatal". Claimant contends that this statement evidences that the Board utilized an erroneous "but for" standard in deter-

mining whether the assault arose out of the employment. In support of this contention, claimant relies on *Matter of McCarter v LaRock* (240 NY 282, 284-285) and *Matter of Scholtzhauer v C & L Lunch Co.* (233 NY 12), which rejected such a broad view of workers' compensation coverage and required that a rational causal nexus exist between the employment and the injury. Recent decisions of the Court of Appeals demonstrate that this remains the operative standard in New York *(see, e.g., Matter of Lemon v New York City Tr. Auth.,* 72 NY2d 324; *Matter of Malacarne v City of Yonkers Parking Auth.,* 41 NY2d 189).

In the context of assaults upon an employee, the causal link may be supplied by a work environment which increased the risk of attack *(see,* 1 Larson, Workmen's Compensation § 11.11 [b]) or a work-related motivation for the assault *(see, id.,* at § 11.12; *see also, Matter of Seymour v Rivera Appliances Corp.,* 28 NY2d 406, 409). In the instant case it is not argued, nor does there appear to be any basis in the record for concluding, that the Met, at 9:30 P.M. in the midst of a performance, constituted a dangerous work environment. Thus, the issue to be determined is whether, based on the uncontroverted circumstances of decedent's attempted rape and murder, the Board could properly find, in reliance on the statutory presumption, that the assault was motivated by some factor related to decedent's employment. In our view, the circumstances of the attempted rape and murder, as well as the facts that decedent had never met Crimmins prior to encountering him in the elevator and that whatever he initially said to her* provoked decedent to slap him across the face, strongly support an inference that the motivation for the attack was unrelated to either Crimmins' or decedent's employment. Moreover, as one authority has observed, "there is no clearer example of non-industrial motive than rape" (1 Larson, Workmen's Compensation § 11.11 [b]).

Most troublesome, however, is the Board's failure to give any indication in its decision that it considered this uncontroverted evidence for its potential to rebut the statutory presumption of compensability. This is particularly significant in light of the fact that the evidence of the circumstances surrounding the homicide was provided by the testimony of an apparently impartial police officer who investigated the crime.

---

* Crimmins never revealed the content of this statement made to decedent.

In addition, Crimmins' written confession, which was also admitted into evidence and supports the inference that he chose his victim arbitrarily and that there was no employment-related animus between himself and decedent, is not self-serving and therefore should not be summarily discredited simply to preserve the presumption *(see, Matter of Kaylor v 133 E. 80th St. Corp.,* 43 AD2d 999, 1000; *see also, Matter of Magna v Hegeman Harris Co.,* 258 NY 82, 84-85). Nor was the Board free to ignore this evidence in making its determination *(cf., Matter of Oehley v Syracuse Boys Club,* 151 AD2d 825, 828). Because it is not clear from the Board's decision whether an improper "but for" standard was applied, or whether the Board in fact weighed the available evidence and properly determined that the statutory presumption was not rebutted, the matter should be remitted for clarification *(see, Matter of Seidel v Crown Indus.,* 132 AD2d 729, 731).

KANE, J. (dissenting). We are not persuaded that this matter should be remitted to the Board for further proceedings.

The majority accepts the Board's findings that decedent's attempted rape and murder by her coemployee occurred in the course of her employment, but concludes that the circumstances "strongly support an inference that the motivation for the attack was unrelated to either Crimmins' or decedent's employment". They then criticize the Board for failing to consider "this uncontroverted evidence for its potential to rebut the statutory presumption of compensability". After making other factual determinations, they find that the Board may have applied an improper standard or improperly weighed the available evidence in determining whether the statutory presumption had been overcome.

In our view, this reasoning is unacceptable. It is well established that in a claim for death benefits, when the death has occurred in the course of employment and is unwitnessed or unexplained, it is presumed, first, to have arisen out of the employment, and, second, to be the result of an accident (Workers' Compensation Law § 21 [1], [3]). It is equally well established that the Board's decisions on questions of fact, if supported by substantial evidence, are conclusive and the inferences to be drawn from that evidence are for the Board to determine *(Matter of Masek v St. Vincent's Med. Center,* 97 AD2d 580). Moreover, it is in the exclusive province of the Board to decide what evidence it will accept or reject and, in so deciding, it may cull from the record that which it finds to

be substantial and reject any other part thereof. In order to overcome the presumption that an accident arose out of the employment, the burden is upon the party seeking to overcome that presumption by the production of the requisite substantial evidence *(Matter of Wiktorowicz v Kimberly-Clark Corp.,* 99 AD2d 903, *lv denied* 62 NY2d 605). Here, the only evidence available to shed any light upon what occurred when decedent was confronted by Crimmins are the statements made by Crimmins to the police and the Assistant District Attorney. Under the circumstances, the Board had the absolute right to reject this evidence *(see, Matter of Kaylor v 113 E. 80th St. Corp.,* 43 AD2d 999).

Thus, in this case, involving an assault by one employee against a coemployee, controlling case law instructs us that an award may be sustained "so long as there is any nexus, however slender, between the motivation for the assault and the employment" *(Matter of Seymour v Rivera Appliances Corp.,* 28 NY2d 406, 409). In this case, that nexus is provided by the relationship between Crimmins and decedent as coemployees. Significantly, and unlike cases relied upon by the majority, there is no showing of any personal animosity, or even a prior relationship, between decedent and Crimmins. Absent such a showing, personal animosity cannot be inferred without substantial evidence to support it *(see, supra,* at 409). The decision of the majority is founded either upon its factual determinations after weighing the evidence or upon pure speculation. In our view, *Matter of Seymour v Rivera Appliances Corp. (supra)* is the controlling authority and mandates an affirmance of the Board's decision.

MAHONEY, P. J., and MERCURE, J., concur with LEVINE, J.; KANE and CASEY, JJ., dissent and vote to affirm in an opinion by KANE, J.

Decision reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this court's decision.