■ In the Matter of the Claim of ELEANOR CAST, Appellant, v CITY OF GLOVERSVILLE WATER DEPARTMENT et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.—Levine, J. Appeal from a decision of the Workers' Compensation Board, filed September 30, 1988, as amended by decision filed April 5, 1989.

Donald Cast (hereinafter decedent) was employed as a watershed caretaker by the City of Gloversville Water Department (hereinafter the employer) until his death on October 12, 1982. As caretaker, decedent was responsible for maintaining the watersheds, reservoirs and surrounding forest lands owned by the employer. Decedent was compensated with a salary and a residence by the employer. All maintenance and utility costs associated with the house were paid for by the employer.

On the day of his demise decedent had spent the entire day cutting wood in a forested area of the employer's property with the assistance of two of the employer's laborers. The three men had driven to the site in the morning in a pickup

truck which the employer had provided to decedent for his use. All equipment used by the men also belonged to the employer. Decedent used a chainsaw to cut logs into smaller sections and the laborers loaded the wood onto the pickup truck. When the truck was full, they drove to decedent's home and stacked the logs in a woodshed located just outside the house. The men continued working and the pickup truck was loaded a second time when, just before 3:00 P.M., decedent suddenly collapsed and died, apparently from a heart attack.

Claimant, decedent's widow, sought workers' compensation death benefits. The employer controverted the claim on the ground, *inter alia,* that decedent was outside the course of his employment at the time of his death. A hearing was held in which Kenneth Gray, one of the laborers who worked with decedent that day, testified that he believed they were cutting firewood for decedent's personal use although he admitted that decedent never actually told him this.

Gary Culver, decedent's supervisor, also appeared as a witness. Culver testified that, in spite of the fact that the employer paid the costs of oil heat for decedent's residence without limitation, decedent had installed a wood-burning stove in the house. Culver also stated that the cutting of trees and lumber on the employer's property was restricted to only those trees marked by a conservation officer and that, in any event, employees were not permitted to take firewood from the employer's lands. In addition, Culver testified that decedent's responsibilities included cutting trees and pruning limbs, but only when the trees were diseased, presented a hazard or otherwise interfered with the functioning of the reservoir or watershed areas. When such trees had to be cut, according to Culver, the caretaker was instructed to leave the wood stacked at the site.

Culver testified that he met with decedent every Monday to discuss the work to be performed each week and that there had been no mention of woodcutting activity at their last meeting. Culver also produced decedent's daily work ledger which contained an entry for the morning of October 12, 1982 in which decedent had written that he had spent the morning cleaning out a pit. Culver testified that when he spoke to the laborers on the day in question, they informed him that decedent had been cutting firewood to be taken back to his house when he collapsed.

Rodney Neilsen, a senior forester for the State Department of Environmental Conservation, testified that he marked trees for harvesting on the employer's property as part of a refores-

tation program. Neilsen stated that he inspected the stumps in the area where decedent had died and found that those trees had not been marked for cutting.

The Workers' Compensation Board denied claimant benefits based upon its determination that decedent's death did not arise out of or in the course of his employment because he was cutting trees for firewood for his personal use at the time of the accident. This appeal by claimant ensued.

Claimant's main point for reversal is that there was insufficient credible evidence adduced by the employer to rebut the presumption of compensability under Workers' Compensation Law § 21. We disagree. "The determination of what is reasonable activity and what is unreasonable, and thus a deviation, is factual and the Board is afforded wide latitude in deciding whether the employee's conduct is disqualifying" (Matter of Richardson v Fiedler Roofing, 67 NY2d 246, 249). The testimony of Culver and the other evidence adduced was sufficient to permit the Board to find that decedent was in fact cutting firewood for personal use at the time of his death and that he was aware of the employer's rule prohibiting this activity. In addition, in light of the uncontroverted evidence that the employer provided all heat requirements for the house, the Board could properly find that decedent's activity was not reasonably and sufficiently work related under the circumstances (see, Matter of Peckham v Peckham Materials Corp., 146 AD2d 893, 894; see also, Matter of Purdy v Savin Corp., 135 AD2d 975, 976; cf., Matter of O'Neil v Randolph Dairy Farm, 65 AD2d 907, 908). Because the Board's determination is supported by substantial evidence, there must be an affirmance.

Decision affirmed, without costs. Kane, J. P., Weiss, Levine and Mecure, JJ., concur.

Harvey, J., dissents and votes to reverse in a memorandum. Harvey, J. (dissenting). I respectfully dissent.

In my view, the finding of the Workers' Compensation Board that decedent's death did not arise out of or in the course of his employment is not supported by the record. It is hornbook law that the Workers' Compensation Law "must be liberally construed in favor of the employee or other claimant, to effectuate the humanitarian, beneficent, and social objects and purposes of the act" (65 NY Jur, Workers' Compensation, § 55, at 398-400). The evidence was less than conclusive in most respects and largely came from the testimony of a supervisor of the City of Gloversville Water Department,

which is the self-insured employer in the case. It would appear that the decision of the Board was predicated upon a finding that decedent was engaged in woodcutting for his personal use when he was stricken. The accuracy of that determination fails, in my view, to conform to all of the evidence. Unfortunately the one person who could accurately state the complete duties of a caretaker on this watershed and the relationship between the caretaker and the employer would have been decedent himself. My conclusion from all the evidence is that the caretaker lived on the premises to benefit the owner of the land. The specific projects which he was required to perform were discussed between him and his supervisor. However, looking after the premises to observe any condition of the property which would have a detrimental effect upon the use of the property and the protection of the property against intruders was not directed in any formal manner. To facilitate the caretaker's duties in those respects the employer provided him with a house, paid for its utilities and made all necessary repairs. Consequently, in my view, the caretaker was on duty whenever he was on the premises in or out of the house.

There was evidence, uncontradicted, that decedent had installed certain woodburning stoves in the house which was known to the employer. There was good evidence supporting a finding that the firewood being cut at the time decedent was stricken was to be used to heat the house. Consequently, it is clear that decedent was in fact providing fuel to assist the employer's responsibility to heat the house. This was a benefit to the employer and was performed in the course of decedent's employment.

The issue most discussed by the parties was the assertion by decedent's supervisor that no one was to cut firewood without the express authorization of the employer. Assuming the existence of such a rule and assuming that decedent did not have specific authority to cut the wood, the claim still should not be denied. The Court of Appeals in *Matter of Merchant v Pinkerton's Inc.* (50 NY2d 492) held that willful disobedience of the rules of the workplace has no bearing upon whether an injury is compensable. In that case, claimant was expressly forbidden to carry a firearm unless instructed to do so. Claimant violated that rule and was killed when his gun went off accidentally. In *Matter of Richardson v Fiedler Roofing* (67 NY2d 246) the Court of Appeals affirmed an award of death benefits to survivors of a roofer who fell while illegally removing a copper downspout for his own personal gain. Applying the reasoning of the court in those two cases, the unautho-

rized cutting of firewood in the instant case should not defeat the claim.

Accordingly, I would reverse the Board's decision and award benefits to claimant.